No. 16-4159

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

### WEYERHAEUSER COMPANY

**Plaintiff-Appellant,**

**vs.**

### DOMTAR CORP. and DOMTAR PAPER COMPANY, LLC,

**Defendants-Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

District Court Case No. 1:14-cv-00024-SLR

The Honorable Sue L. Robinson, District Judge

### APPELLANT'S OPENING BRIEF

BAYARD, P.A.
Stephen B. Brauerman
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000

HILLIS CLARK MARTIN &
PETERSON P.S.
Laurie Lootens Chyz
Jake Ewart
999 Third Avenue, Suite 4600
Seattle, Washington 98104
(206) 623-1745

Counsel for Plaintiff-Appellant

## CORPORATE DISCLOSURE STATEMENT

Weyerhaeuser Company is a Washington corporation.  Its stock is publicly traded on the New York Stock Exchange under the symbol WY. Weyerhaeuser has no parent company, and no other publicly held company holds 10% or more of Weyerhaeuser's stock.

There is no publicly held corporation that is not a party to this proceeding but which has a financial interest in the outcome of the proceeding.

# TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................1

II.    JURISDICTIONAL STATEMENT ....................................2

III.   STATEMENT OF THE ISSUES. .........................................3

IV.   STATEMENT OF THE STANDARD OF REVIEW ..........................5

V.    STATEMENT OF RELATED CASES AND PROCEEDINGS.........6

VI.   STATEMENT OF THE CASE ..............................................6

    A.    Statement of Facts ...................................................6

          *1.    Weyerhaeuser sold its fine paper business—including liability for most workers compensation claims—to Domtar.*....................................6

          *2.    Domtar incorrectly interpreted the Sale contracts and convinced Weyerhaeuser the incorrect interpretation reflected the original agreement*...............8

          *3.    The parties agreed that only a signed writing could modify their contractual rights, and Domtar did not request a formal agreement stating that Weyerhaeuser assumed liability for Retired Employees' workers compensation claims.*....................12

          *4.    In refusing liability, Domtar relied on a misreading of the Sale contracts, not an act or writing of Weyerhaeuser's.*............................13

    B.    Proceedings and Disposition in District Court........................15

VII.  SUMMARY OF ARGUMENT ..........................................16

VIII. ARGUMENT .......................................................................18

i

**A.**    **The Parties agreed and understood that only a signed writing could modify the parties' rights under the Sale contracts. ....................................................................18**

**B.**    **Giardini lacked the necessary intent to waive Weyerhaeuser's rights because she was mistaken about the rights Weyerhaeuser possessed. ...........................................21**

**C.**    **Giardini lacked the requisite knowledge of Weyerhaeuser's rights to establish waiver or acquiescence..............................................................24**

**D.**    **Weyerhaeuser could legally retract a waiver at any time because Domtar was not prejudiced. .........................................27**

**E.**    **Acquiescence does not apply to the tender of future claims. ..........................................................................31**

**F.**    **The parties' agreements tolled the statute of limitations. .......34**

**IX.    CONCLUSION .........................................................................35**

# TABLE OF AUTHORITIES

**Page**

### Cases

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428
(Del. 2005) .................................................................................... 21, 23, 24

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 27 A.3d 522
(Del. 2011) ................................................................................................27

*Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571 (Del. Ch. 1998) ..................19

*Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413
(Del. 1985) ................................................................................................34

*Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219 (Del. Ch. 2000) ................20

*Cornerstone Equip. Leasing, Inc. v. MacLeod*, 247 P.3d 790 (Wash. Ct.
App. 2011) ................................................................................................27

*Dervaes v. H.W. Booker Constr. Co.*, 1980 WL 333053 (Del. Super. Ct.
May 28, 1980) ...........................................................................................21

*E.I. duPont de Nemours & Co. v. Medtronic Vascular, Inc.*, No. CIV.A.
N10C-09058MMJ, 2013 WL 261415 (Del. Super. Ct. Jan. 18, 2013),
*as corrected* (Jan. 29, 2013) .........................................................................35

*Hawkins v. MedApproach Holdings, Inc.*, No. 1:13-CV-05434 ALC DF,
2014 WL 3926811 (S.D.N.Y. Aug. 11, 2014) ...........................................33

*In re Blair*, 18 B.R. 277 (Bankr. D.N.D. 1982) .................................................22

*In re Coca–Cola Enter., Inc.*, No. 1927-CC, 2007 WL 3122370 (Del.
Ch. Oct. 17, 2007) ....................................................................................32

*In re Marriage of Woods*, 207 Or. App. 452, 142 P.3d 1072 (2006) ...............22

*In re Olympic Mills Corp.*, 333 B.R. 540 (B.A.P. 1st Cir. 2005 (quoting
*Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1229 (Del. Ch.
2000)), aff'd, 477 F.3d 1 (1st Cir. 2007) ...................................................20

*Julian v. E. States Const. Serv., Inc.*, No. CIV.A. 1892-VCP, 2008 WL 2673300 (Del. Ch. July 8, 2008) ........................................................... 24, 25

*Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035 (Del. 2014)............... 21, 24, 31

*Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, 372 A.2d 168 (Del. 1976) ...................................................................................30

*Minnesota Mut. Fire & Cas. Co. v. Rudzinski*, 347 N.W.2d 848 (Minn. Ct. App. 1984) ...................................................................22

*Moore v. Travelers Indem. Ins. Co.*, 408 A.2d 298 (Del. Super. 1979) ..... 22, 25

*New Castle Cty. v. Hartford Acc. & Indem. Co.*, 970 F.2d 1267 (3d Cir. 1992)....................................................................................22

*Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 282 A.2d 643 (Del. Ch. 1971) ...........................................................................25

*Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28 (Del. 1972) ...................................................................................25

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ................................5

*Price v. Wilmington Trust Co.*, CIV A No. 12476, 1995 WL 317017 (Del. Ch.May 19, 1995)........................................................... 32, 33

*Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450 (Del. 1982) ...................................................................................21

*Roam–Tel Partners v. AT & T Mobility Wireless Operations Holdings Inc*., CIV A. No. 5745-VCS, 2010 WL 5276991 (Del. Ch. Dec. 17, 2010)..............................................................................29

*Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879 (3d Cir. 2013) ..................................5

*Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, No. CIV.A. 4119-VCS, 2010 WL 363845 (Del. Ch. Jan. 27, 2010) .............................30

*Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654 (Del. Ch. 2006) ....... 32, 33

*Tenneco Auto. Inc. v. El Paso Corp.*, No. CIV. A. 18810-NC, 2004 WL 3217795 (Del. Ch. Aug. 26, 2004) .............................................31

*Textron, Inc. v. Acument Global Tech., Inc.*, 2011 WL 1326842 (Del. Super. Ct. April 6, 2011) ...............................................................26

*Textron, Inc. v. Acument Global Tech., Inc.*, 2014 WL 2903060 (Del. Super. Ct. March 25, 2014) ........................................... 26, 27, 29

**Treatises**

26 Am. Jur. 2d, <u>Estoppel and Waiver</u>................................................................21

## I.    INTRODUCTION

When both parties to a contract make the same mistake in interpreting their contractual rights and obligations, they do not rewrite the contract.  After Weyerhaeuser Company ("Weyerhaeuser") sold its fine paper business to Domtar Corporation and Domtar Paper Company, LLC (together, "Domtar") in 2007 for $3.3 billion (the "Sale"), the parties both, for a temporary period of time, misunderstood how the contracts allocated liability for certain workers compensation claims.  Domtar misunderstood the various contracts that governed the complicated transaction (the "Sale contracts"), and, beginning in 2009, Weyerhaeuser temporarily and mistakenly agreed that Domtar's interpretation was correct.  The parties then administered the Sale contracts in accordance with their shared misunderstanding.  That resulted in Weyerhaeuser, instead of Domtar, paying approximately $9 million in workers compensation claims.  While this was happening, neither party believed Weyerhaeuser had waived a right under the Sale contracts; both parties simply got the contract interpretation wrong.

When Weyerhaeuser discovered that it was paying Domtar's liability, it began tendering these workers compensation claims to Domtar.  Domtar refused liability based solely on its misreading of the Sale contracts, and then continued to hold to its mistaken interpretation in this litigation.  It was only after the

district court rejected Domtar's interpretation that Domtar began arguing Weyerhaeuser had waived its contractual rights.

Waivers are strongly disfavored, and courts are reluctant to find them absent compelling evidence. The parties below focused on whether Weyerhaeuser waived its right to tender workers compensation claims. The district court *sua sponte* found a second contract provision was waived—the provision requiring that any waiver or modification to the Sale contracts be made in writing—even though neither party argued that provision was waived and both had performed as if the provision remained in effect. Neither waiver found by the district court is supported by the unequivocal evidence Delaware law requires. Furthermore, because only a written waiver could be effective, the doctrine of acquiescence, which is similar to a waiver of contractual rights by conduct, has no bearing on this dispute, and the district court erred in ruling otherwise. This Court should reverse the district court's ruling, and find Domtar retains the liability for workers compensation claims it originally agreed to bear when it signed the Sale contracts.

## II.    JURISDICTIONAL STATEMENT

Diversity jurisdiction existed in the district court under 28 U.S.C. § 1332(a) because the plaintiff is a citizen of Washington, the defendants are citizens of Delaware, and the amount in controversy exceeds $75,000. Appellate

jurisdiction exists under 28 U.S.C. § 1291 because this appeal is from the district court's final judgment, which disposed of all the parties' claims. This action is timely because the final judgment was entered by the district court on October 20, 2016, and the notice of appeal was filed on November 21, 2016.

## III.    STATEMENT OF THE ISSUES.

1.    Courts do not find a waiver of contractual rights unless there is unequivocal evidence the parties intended a waiver. Neither Domtar nor Weyerhaeuser contended below that the parties had waived the contract requirement that any waiver be made in writing. The parties disputed only whether the writing requirement was satisfied. Nevertheless, the district court ruled, *sua sponte,* that the writing requirement was waived by Weyerhaeuser's conduct and oral statements. Is a signed writing required to waive any rights under the Sale contracts? This issue was not raised or objected to by the parties, but was ruled upon at App. 15-18.

2.    Waiver is the voluntary and intentional relinquishment of a known right, and Delaware law recognizes that the requisite intent to establish a waiver cannot be found in mistake. Domtar temporarily persuaded Weyerhaeuser to operate under a shared mistaken understanding of the Sale contracts, but neither party believed it was acting contrary to the Sale contracts or that Weyerhaeuser had waived any rights. Did Weyerhaeuser intentionally waive its rights when it

performed according to a mistaken interpretation? This issue was raised by

Weyerhaeuser at Trial D.I. No. 51 at 11-14, objected to by Domtar at Trial D.I.

No. 64 at 3-5, and ruled upon at App. 25-26.

3.      The doctrine of acquiescence recognizes a party may not seek relief

for a breach if it had full knowledge of its rights and its conduct leads the other

party to believe the breach had been approved.  During the relevant time,

Weyerhaeuser operated under a mistaken interpretation of the Sale contracts.

Moreover, the Sale contracts require all modifications of contractual rights to be

in writing.  Does the doctrine of acquiescence bar Weyerhaeuser's claims? This

issue was raised by Domtar at Trial D.I. No. 56 at 16-17, objected to by

Weyerhaeuser at Trial D.I. No. 67 at 8-11, and ruled upon at App. 25-26.

4.      Plaintiffs may retract contractual waivers if there is no prejudice to

the defendant and the plaintiff provides reasonable notice.  Although Domtar

asserts Weyerhaeuser waived its rights by paying workers compensation claims

between 2008 and 2011, Weyerhaeuser resumed tendering claims to Domtar in

2012.  Between 2008 and 2011, Weyerhaeuser paid approximately $9 million of

claims that were Domtar's responsibility.  Assuming there was a waiver, did

Weyerhaeuser retract it in 2012? This issue was raised by Weyerhaeuser at Trial

D.I. No. 51 at 15, objected to by Domtar at Trial D.I. No. 64 at 9-11, and ruled

upon at App. 27-29.

4

5.      Acquiescence can absolve a defendant from liability for prior, but not prospective, acts.  Weyerhaeuser consistently tendered workers compensation claims to Domtar from 2012 forward.  Because each rejection of a tendered claim was a separate breach, does acquiescence apply to the claims that Weyerhaeuser began tendering to Domtar in 2012?  This issue was raised by Weyerhaeuser at Trial D.I. No. 67 at 10-11 and Trial D.I. No. 75 at 5-7, objected to by Domtar at Trial D.I. No. 74 at 8-9, and ruled upon at App. 26-27.

6.      Statutes of limitation may be tolled by party agreement.  The parties entered into agreements manifesting their intent to resolve all their disputes regarding workers compensation claims at a later date.  Did the parties' agreements toll the statute of limitations?  This issue was raised by Weyerhaeuser at Trial D.I. No. 16 at 11-12, objected to by Domtar at Trial D.I. No. 17 at 4-5, and ruled upon at App. 38-41.

## IV.    STATEMENT OF THE STANDARD OF REVIEW

The standard of review for each issue is *de novo.  Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 899 (3d Cir. 2013) (grant of summary judgment); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (dismissal under Fed. R. Civ. P. 12(b)(6)).

## V.    STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not previously been before this Court, but a related case is pending in the United States District Court for the District of Delaware.  Case No. 17-00177-GMS.  Weyerhaeuser filed those breach of contract and declaratory judgment claims against Domtar because Domtar has failed to accept responsibility for asbestos-related litigation arising from the conduct of Domtar's fine paper business.  That case does not need to be resolved before or in conjunction with this appeal.  Weyerhaeuser is not aware of any other case or proceeding that is in any way related to this case and completed, pending, or about to be presented before any court or agency.

## VI.    STATEMENT OF THE CASE

### A.    Statement of Facts

#### 1.    Weyerhaeuser sold its fine paper business—including liability for most workers compensation claims—to Domtar.

In March 2007, Weyerhaeuser sold its fine paper business to Domtar for $3.3 billion pursuant to agreements governed by Delaware law.[1]  Weyerhaeuser was divesting itself of its fine paper business, so the Sale was structured to

---

[1] The Sale contracts include the Amended and Restated Contribution and Distribution Agreement ("Contribution Agreement") (App. 317-374), and the Amended and Restated Transaction Agreement ("Transaction Agreement") (App. 376-486), both dated January 25, 2007.

transfer all assets and liabilities of the fine paper business to Domtar except for assets and liabilities expressly retained by Weyerhaeuser.[2]  (App. 334-42.) Domtar therefore assumed nearly all workers compensation liabilities—past, present, and future—associated with the fine paper business.

Three categories of workers compensation liability are relevant to this action, but only one is still in dispute.  The first category consists of workers compensation liability for fine paper employees who worked for Weyerhaeuser before the Sale, then continued to work for Domtar after the Sale ("Transferred Employees").  Domtar has accepted liability for Transferred Employees.  (*See* Trial D.I. No. 13 at 2.)  Weyerhaeuser specifically retained liability in the Sale contracts for the second category, which consists of workers compensation liability for fine paper employees who were receiving workers compensation benefits at the time of the Sale and were employed by, but on leave from, Weyerhaeuser ("U.S. WC Newco Employees").  (App. 439-40.)  The parties disagree only about the third category, which consists of workers compensation liability for all other pre-Sale fine paper employees, including those who were

---

[2] Weyerhaeuser accomplished the Sale, in part, by transferring its fine paper business to Domtar Paper Company, LLC, then transferring ownership of Domtar Paper Company, LLC to Domtar Corporation.  (*See* App. 381-382.) Domtar Paper Company, LLC (which was created by Weyerhaeuser specifically to hold the fine paper business for purposes of the Sale) is referred to as "Newco" in the Sale contracts.  (*See, e.g.*, App. 381.)

retired or were otherwise terminated before the Sale and never became Transferred Employees (collectively, "Retired Employees").

Workers compensation liability for Retired Employees was not among the liabilities retained by Weyerhaeuser under Section 2.03(b) of the Contribution Agreement, and was not retained by Weyerhaeuser anywhere else in the Sale contracts. Therefore, the liability transferred to Domtar as part of the Sale. The district court confirmed this contract interpretation over Domtar's objection, and Domtar does not appeal that ruling. (App. 34-38.)

**2. Domtar incorrectly interpreted the Sale contracts and convinced Weyerhaeuser the incorrect interpretation reflected the original agreement.**

Shortly after the Sale closed, the parties had a variety of disagreements, including over which party was liable for the workers compensation claims of Retired Employees. In April 2007, Weyerhaeuser assigned $13,594,814 in workers compensation liability to Domtar. (App. 50.) Domtar refused to accept this liability. In an email dated April 23, 2007, Domtar employee Michael Cross told Weyerhaeuser that he had "done a tour of the parish on this issue," and that it was Domtar's "collective understanding that [workers compensation] is not a liability that belongs to Domtar Corp." (App. 49.) Weyerhaeuser disagreed, but told Domtar that Weyerhaeuser would make workers compensation payments on Domtar's behalf until the issue was resolved. (*Id.*)

8

Weyerhaeuser continued to assign workers compensation liability to Domtar during post-Sale discussions. On June 6, 2007, Domtar's general counsel, Gilles Pharand, wrote to Weyerhaeuser's general counsel, Sandy McDade, again to dispute allocation of the workers compensation liability to Domtar. (App. 69-70.) When McDade responded, he identified the contract provisions that assigned liability to Domtar, and outlined the same contract analysis later applied by the district court in denying Domtar's motion to dismiss. (App. 91-95.) Weyerhaeuser then began requesting payment from Domtar for workers compensation payments made on Domtar's behalf. (*E.g.*, App 105-06.)

After this exchange, the participants in the parties' negotiations changed. By mid-2008, Anne Giardini, general counsel for Weyerhaeuser's Canadian subsidiary, took over negotiating the post-Sale disputes, including the workers compensation issues. (App. 487.) On September 11, 2008, Domtar and Weyerhaeuser representatives, including Giardini, met to discuss the open issues. (*See* App. 120.) At the meeting, Domtar took the incorrect position it

later advanced to the district court—that the Sale contracts made it responsible only for the Transferred Employees.[3]  (App. 122.)

Giardini was persuaded by Domtar's argument due to a shared mistaken interpretation of the Sale contracts.  (*Id.*)  She testified that "The conclusion that workers' compensation liability went to Domtar only for employees that showed up to work at Domtar is mistaken advice from me.  That conclusion is based on mistaken advice from me and misreading of the agreements." (App. 128.)  It was mistaken advice, she explained, because she was focused on one contract provision instead of "the correct overall transaction transfer of liabilities[.]" (App. 129-30.)  Neither party had turned its attention to potential liabilities associated with Retired Employees (App. 125), and testimony from Domtar representatives confirms Retired Employee claims were never discussed at the September meeting (*e.g.*, App. 75-76, 83, 198-99, 201-02).

Because Giardini was temporarily persuaded by Domtar's incorrect legal position, Weyerhaeuser began making internal changes that reflected its adoption of Domtar's mistaken interpretation.  On November 26, 2008, Giardini sent Domtar a letter confirming that prior invoices had improperly included

---

[3] Giadini testified that she would have spoken to Sandy McDade after this meeting, but she did not testify that she spoke to him about the workers compensation issue.  (App. 548.)

claims by Retired Employees.  (App. 189-93.)  She also stated, "In fact, we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar."  (App. 191.) The letter is marked "WITHOUT PREJUDICE" in the header on the first page. (App. 189.)

Below, Domtar argued this letter constituted a written waiver, as required by Section 9.10 of the Contribution Agreement. (Trial D.I. No. 64 at 7.) However, Giardini, a Canadian lawyer, used the "Without Prejudice" designation to indicate that the information conveyed was for negotiation purposes only and that the recipient could not rely on the letter unless it was later confirmed by formal, binding agreement.  (App. 139.)  Domtar employees also used the "Without Prejudice" designation on correspondence, which is a common practice among Canadian lawyers.  (App. 164-66, 172-73, 176-77.) Employees of Domtar, a Canadian corporation, also understood that communications marked "Without Prejudice" could not be relied upon by the recipient.[4]  In fact, in other contemporaneous post-Sale negotiations with

---

[4] App. 101 ("Q: But your understanding is 'without prejudice' means that it's without prejudice to somebody's legal rights; correct?  A: That is what it's supposed to mean."); App. 86-87 ("Q:  Okay. At the top of this letter, on the first page, it says 'without prejudice.' Do you know what that meant?" A: " . . . My understanding is, it means that it's not to be used against me, you know, if you say something along those lines."); App. 205 ("A: 'Without prejudice' is

11

Domtar, Giardini insisted that Domtar remove the "Without Prejudice"

designation from one of its letters, since Giardini and Weyerhaeuser wanted to

be "able to rely on" it.  (App. 143, 487-91.)

> ### 3.    The parties agreed that only a signed writing could modify their contractual rights, and Domtar did not request a formal agreement stating that Weyerhaeuser assumed liability for Retired Employees' workers compensation claims.

The parties had a course of dealing that involved executing formal

agreements when resolving Sale-related disputes.  (App. 109, 142-43, 169, 488.)

This was appropriate because Section 9.10 of the Contribution Agreement

requires all Sale contract modifications—including waivers—to be in writing:

> No provisions of this Agreement or any Ancillary Agreement shall be deemed waived, amended, supplemented or modified by any party, unless such waiver, amendment, supplement or modification is in writing and signed by the authorized representatives of (i) the Person against whom it is sought to enforce such waiver, amendment, supplement or modification, and (ii) if such waiver, amendment, supplement or modification occurs prior to the Effective Time, Domtar.

(App. 372.)

Neither party has *ever* argued this writing requirement was waived.

Instead, the parties followed their course of dealing.  For example, the parties

entered into a settlement agreement in December 2009 resolving other post-Sale

---

something that you will put on the paper to – and make sure that you preserve
your rights.").

disputes.  (App. 243-70.)  That agreement did not resolve the workers

compensation issues disputed here, but reserved each sides' rights with respect

to all matters not addressed in that agreement.  (App. 244.)  Although Domtar

had Giardini's November 2008 letter for over a year when it negotiated the 2009

settlement, Domtar made no attempt to formally memorialize Giardini's

statement regarding workers compensation liabilities at that time or any other.

Instead, the parties operated under a shared misunderstanding of their

rights under the Sale contracts.  For approximately three years after Giardini's

November 2008 letter, Weyerhaeuser invoiced Domtar only for claims filed by

Transferred Employees, and Domtar paid those invoices.  (*See* App. 55-56.)

During that same time, Weyerhaeuser paid approximately $9,000,000 of workers

compensation claims for Retired Employees.  (App. 311-12.)

### 4. In refusing liability, Domtar relied on a misreading of the Sale contracts, not an act or writing of Weyerhaeuser's.

In January 2012, Weyerhaeuser resumed invoicing Domtar for Retired

Employees workers compensation claims, asserting that liability transferred to

Domtar in the Sale.  (App. 272-73, 275-76.)  In rejecting the tenders, Domtar did

not argue that it interpreted Weyerhaeuser's previous actions as modifying the

parties' rights under the Sale contracts.  Nor did Domtar indicate any reliance

upon Giardini's November 2008 letter.  (App. 272-73, 275-76, 279-80, 282-84,

286.)  Instead, Domtar continued to rely on the parties' incorrect "common

13

understanding" that the Sale contracts assigned Domtar responsibility only for Transferred Employees.  (App. 826-27.)

In fact, as recently as 2013, the parties explicitly agreed that workers compensation was still an open issue—not an issue that had been waived or otherwise resolved previously.  Consistent with their course of dealing, the parties entered into a formal agreement dated February 28, 2013, that resolved other outstanding disputes.  (App. 294-99.)  The parties explicitly agreed that the agreement did "not address" the workers compensation disputes at issue here, which the agreement referred to as the "Non-Addressed Workers Comp Claims":

> The parties intend to address issues relating to these Non-Addressed Workers Comp Claims at a later date after the Parties have finalized the population of claims to be included in a settlement. Pending the later addressing of those issues, the Parties reserve all rights with respect to the Non-Addressed Workers Comp Claims.

(App. 297.)

No party suggested in that agreement or elsewhere that the workers compensation issue had been waived.  To the contrary, Domtar consistently argued—including to the trial court in this litigation—that the Sale contracts themselves (not some subsequent agreement or action *changing* the contracts) assigned Domtar liability only for Transferred Employees.  (*E.g.*, Trial D.I. No. 13 at 4-9.)

14

### B.    Proceedings and Disposition in District Court

On January 13, 2014, Weyerhaeuser brought this breach of contract action against Domtar in the United States District Court for the District of Delaware. (Trial D.I. No. 1.)  On February 21, 2014, Domtar filed a 12(b)(6) motion to dismiss that relied primarily on its incorrect interpretation of the Sale contracts, and secondarily on a statute of limitations argument.  (Trial D.I. No. 12.)  The district court agreed with Weyerhaeuser's interpretation of the contracts and denied Domtar's motion in part.  (App. 34-38.)  Domtar has not appealed this ruling.  The district court also granted Domtar's motion in part by ruling the statute of limitations barred Weyerhaeuser from recovering damages for workers compensation claims that were tendered more than three years before the complaint was filed.  (App. 4.)

Domtar then filed its answer on August 13, 2014, in which, for the very first time, it asserted an affirmative defense of waiver.  (Trial D.I. No. 20.)  On September 25, 2015, the parties filed cross motions for summary judgment regarding Domtar's waiver defense.  (Trial D.I. Nos. 50, 55.)  In addition, Domtar asserted that Weyerhaeuser's claims should be dismissed based on the affirmative defense of acquiescence, which it raised for the first time in summary judgment briefing.  (Trial D.I. No. 56.)  The district court denied Weyerhaeuser's motion and granted Domtar's on August 31, 2016.  (App. 3.)

15

The district court ruled that, as a result of Weyerhaeuser's conduct,

Weyerhaeuser had waived its contractual rights regarding workers compensation

liability and had acquiesced to Domtar's mistaken contractual interpretation.

(App. 25-27.)  The court further held that Weyerhaeuser could not retract its

waiver or acquiescence.  (App. 27-29.)  Weyerhaeuser appealed.  (App. 1.)

## VII.  SUMMARY OF ARGUMENT

The district court misapplied Delaware law to find that Weyerhaeuser

intentionally and knowingly waived two important contract rights.  First, the

district court incorrectly ruled that Weyerhaeuser waived the clause in the Sale

contracts that required any modification or waiver be memorialized in a signed

writing.  Neither party asserted that clause was waived.  Because waiver is a

matter of intent, and there must be unequivocal evidence of an intent to waive,

the trial court erred in finding that Weyerhaeuser waived the writing requirement

by its oral statements or conduct.  Domtar certainly did not believe a waiver had

occurred.

Second, after discarding the writing requirement in the Sale contracts, the

court concluded that Weyerhaeuser's conduct alone waived its substantive rights

under the contracts.  This was error.  The parties agreed that only written

waivers would be effective.  For that same reason, the doctrine of acquiescence,

which is based on the acquiescing party's conduct, could not affect the parties' rights under the Sale contracts.

Instead of arguing that the writing requirement had been waived, Domtar argued before the district court that the writing requirement was satisfied. Domtar argued that a letter sent by Weyerhaeuser representative Anne Giardini in November 2008 constituted a written waiver of Weyerhaeuser's rights. That letter does not constitute a waiver. Waivers are the voluntary and intentional relinquishment of a known right, and it is undisputed that Giardini was mistaken about what rights Weyerhaeuser had when she wrote that letter. This is obvious from the text of the letter itself, which describes only a shared (mistaken) understanding of what the Sale contracts already required, *not a change to the terms of the contracts*. The letter reflected only a mistake, and under Delaware law, a party's mistake cannot establish a waiver. Moreover, Giardini demonstrated she did not intend for her letter to be relied upon when she designated it as "Without Prejudice." Canadian lawyers, including lawyers for Domtar, understand that the "Without Prejudice" designation means the contents of the document cannot be legally binding. Furthermore, the parties' course of dealing shows that they executed formal settlement agreements when they resolved disagreements, and they did not do that here.

Even if there was a waiver or acquiescence, it would not extend past January 2012 when Weyerhaeuser resumed tendering workers compensation claims to Domtar.  Delaware law permits parties to retract waivers after giving notice, and Weyerhaeuser's tenders to Domtar constituted sufficient notice. Retraction of a waiver is also permitted if the defendant is not prejudiced by the retraction.  Here, Domtar actually *profited* by approximately $9 million over the time it temporarily persuaded Weyerhaeuser to accept the parties' shared misunderstanding of the Sale contracts.  Furthermore, because acquiescence is based on conduct approving a particular act in the past, Weyerhaeuser cut off any future acquiescence by changing its conduct and tendering claims to Domtar.

Finally, the statute of limitations does not bar any of Weyerhaeuser's claims.  Statutes of limitations may be tolled by agreement, and the parties entered into two agreements that manifested their intent to preserve the entire workers compensation dispute for future resolution.

## VIII. ARGUMENT

### A.    The Parties agreed and understood that only a signed writing could modify the parties' rights under the Sale contracts.

Section 9.10 of the Contribution Agreement requires that any modification of the rights fixed by the Sale contracts would be contained in a signed writing.

18

> "No provisions of this Agreement or any Ancillary Agreement
> shall be deemed waived, amended, supplemented or modified by
> any party, unless such waiver, amendment, supplement or
> modification is in writing and signed by the authorized
> representatives of (i) the Person against whom it is sought to
> enforce such waiver, amendment, supplement or modification,
> and (ii) if such waiver, amendment, supplement or modification
> occurs prior to the Effective Time, Domtar."

(App. 372.)  This provision specifically includes waivers, and therefore also

applies to acquiescence.  *See Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571,

584 n.44 (Del. Ch. 1998) ("[A]cquiescence is a species of waiver.").  Delaware

courts that have considered the issue have correctly recognized that a no-waiver

clause would apply to acquiescence.  *Id.* at 584.

No party at any time has argued that Section 9.10 has been waived.  The

parties below focused their arguments on whether Giardini's November 2008

letter *satisfied* Section 9.10's writing requirement.  (*See, e.g.*, Trial D.I. No. 64

at 7 ("Giardini's letter satisfied the requirement of § 9.10 of the Contribution

Agreement…"); Trial D.I. No. 75 at 2 ("Domtar concedes that, under Section

9.10 of the Contribution Agreement, Weyerhaeuser's conduct cannot constitute a

waiver.")  In ruling on the issue, however, the district court impermissibly found

a contractual waiver that neither party contended had occurred.  The district

court ruled that "Delaware law allows a no oral waiver provision to be waived

by oral statements or conduct," and that Weyerhaeuser waived the writing

requirement through its conduct or oral statements.  (App. 16-17.)

19

But waiver is a matter of intent, and Delaware law requires that "a party asserting an oral modification (or waiver) must prove the intended change with 'specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by formal document.'" *In re Olympic Mills Corp.*, 333 B.R. 540, 557 (B.A.P. 1st Cir. 2005 (quoting *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1229 (Del. Ch. 2000)), aff'd, 477 F.3d 1 (1st Cir. 2007). There can be no doubt that the parties intended the writing requirement to remain in effect because both parties argued only about whether it had been *satisfied*. Nor is there a shred of evidence that any party voluntarily, and with a specificity and directness that could leave no doubt, intentionally waived Section 9.10's writing requirement. The district court erred in finding a waiver.

The parties' longstanding practice of executing formal agreements when supplementing or modifying the Sale contracts also precludes a finding that the writing requirement was waived. *Cont'l Ins.*, 750 A.2d at 1229 (one prior written modification sufficient to show the parties did not intend for waiver of written modification clause). Since the parties' course of dealing involved using formal contracts to reconcile their disagreements, the court's *sua sponte* ruling that Weyerhaeuser's conduct and oral statements waived the writing requirement conflicts with Delaware law.

20

The continuing writing requirement alone defeats Domtar's acquiescence affirmative defense.  Acquiescence is necessarily based on conduct.  *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014).  Because the parties agreed and believed that only a writing could modify their rights under the Sale contracts, Weyerhaeuser could not acquiesce to a new interpretation of the Sale contracts.

### B.    Giardini lacked the necessary intent to waive Weyerhaeuser's rights because she was mistaken about the rights Weyerhaeuser possessed.

Domtar has identified only Giardini's November 2008 letter to support a written waiver.  This case turns on whether that letter constitutes a waiver.  "Waiver is the voluntary and intentional relinquishment of a known right."  *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005).  The standards under which Domtar must prove waiver are "quite exacting."  *Id*.  Waiver requires "knowledge of all material facts, and intent to waive."  *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982).  There must be "a clear, unequivocal and decisive act of the party showing" the intent and purpose to waive.  *Dervaes v. H.W. Booker Constr. Co.*, 1980 WL 333053, at *7 (Del. Super. Ct. May 28, 1980) (citing 26 Am. Jur. 2d, Estoppel and Waiver, § 158).  The facts relied upon for proof of waiver "must be unequivocal in character."  *Realty Growth*, 453 A.2d at 456.

21

It is undisputed that Giardini *and* Domtar were mistaken about the parties' rights under the Sale contracts when Giardini sent that letter. Delaware law recognizes that "The requisite intention to establish a waiver cannot be found in mistake." *Moore v. Travelers Indem. Ins. Co.*, 408 A.2d 298, 302 (Del. Super. 1979).[5]

The district court addressed this binding authority in a footnote, and only distinguished it as applying to insurance cases. (App. 22.) But insurance agreements are contracts, so the precedent applies to all contractual disputes with equal force. *See New Castle Cty. v. Hartford Acc. & Indem. Co.*, 970 F.2d 1267, 1270 (3d Cir. 1992) ("When the language of an insurance policy is clear and unambiguous, Delaware applies ordinary principles of contract law."). Giardini's undisputed testimony is that she was mistaken about Weyerhaeuser's contractual rights when she wrote her November 2008 letter, so *Moore* prevents her letter from constituting a waiver. The Court need look no further in reversing the district court and finding for Weyerhaeuser.

_____

[5] Other jurisdictions around the country also hold that waiver cannot be found in a mistake. *See, e.g.*, *Minnesota Mut. Fire & Cas. Co. v. Rudzinski*, 347 N.W.2d 848, 851 (Minn. Ct. App. 1984) ("A mutual mistake of law is not a voluntary relinquishment of a known right and consequently does not support a claim of waiver."); *In re Blair*, 18 B.R. 277, 279 (Bankr. D.N.D. 1982); *In re Marriage of Woods*, 207 Or. App. 452, 462, 142 P.3d 1072 (2006).

However, the district court erred further by ruling Giardini's subjective intent was irrelevant to proving waiver. "Intention forms the foundation of the doctrine of waiver, and an intention to waive must appear clear from the record evidence before summary judgment is granted on this issue." *AeroGlobal*, 871 A.2d. at 445. Giardini's November 2008 letter, marked "Without Prejudice" by Giardini, could not support a waiver because she did not intend for Domtar to rely on it. *Id.* at 444 (a waiving party "must intend to waive" a contractual right). Her subjective intent is necessarily relevant in determining whether she voluntarily intended to give up a known legal right. *Id*. at 446 (describing intent in waiver context as a "subjective reaction").

Moreover, the use of the "Without Prejudice" designation was not only common among Canadian attorneys like Giardini, but also among the parties. The parties would ask that the "Without Prejudice" label be removed from documents they intended to rely upon. That is consistent with the parties' course of dealing in executing formal agreements when resolving disputes. Because "the facts relied upon to prove waiver must be unequivocal," the district court's failure to account for Giardini's subjective intent and the parties' course of dealing constitutes reversible error. *Id*. at 444.

23

## C.     Giardini lacked the requisite knowledge of Weyerhaeuser's rights to establish waiver or acquiescence.

Giardini's mistaken interpretation cannot be an "intentional relinquishment of a known right" because, like Domtar, she did not believe Weyerhaeuser was giving up a right.  Domtar certainly did not believe Weyerhaeuser had waived its rights in 2008, because in 2013 Domtar acknowledged that the workers compensation claims issues were unresolved and needed to be addressed at a later date.  (App. 297.)  Instead, the parties operated under the mistaken belief that they were both performing the Sale contracts as written.  This kind of understanding falls far short of the "unequivocal" facts necessary to prove waiver.  *AeroGlobal*, 871 A.2d at 444.  Domtar's acquiescence defense similarly fails because it requires "full knowledge" of the rights lost by acquiescence.  *Klaassen*, 106 A.3d at 1047.

The district court rejected this argument and found that "Weyerhaeuser did not have to know for certain that Domtar's interpretation was incorrect before it could waive its contract rights or acquiesce to Domtar's incorrect interpretation."  (App. 22.)  Instead, the district court ruled it was "sufficient that Weyerhaeuser knew that there was an 'arguable basis' that Domtar's interpretation was incorrect and yet proceeded to accept Domtar's interpretation anyway."  (*Id.* (citing *Julian v. E. States Const. Serv., Inc.*, No. CIV.A. 1892-VCP, 2008 WL 2673300 (Del. Ch. July 8, 2008); *Pepsi-Cola Bottling Co. of*

24

*Asbury Park v. Pepsico, Inc.*, 282 A.2d 643 (Del. Ch. 1971); *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28 (Del. 1972).)

The *Pepsico* cases cited by the district court do not apply in these circumstances because those parties did not assert there was a mistake in their interpretation of the relevant agreements. *Pepsico*, 282 A.2d 643; *Pepsico*, 297 A.2d 28. *Moore*, which was decided after the *Pepsico* cases, could not have been clearer in holding that the "requisite intention to establish a waiver cannot be found in mistake." *Moore*, 408 A.2d at 302.

The "arguable basis" language cited the district court came from *Julian*, where the court addressed whether a subjective belief about a contractual right, if plainly mistaken, could negate a claim of waiver. 2008 WL 2673300, at *15. There, the defendants asserted they were under the mistaken belief that so long as the plaintiff was employed by at least one of three related entities, then he did not have to sell his stock back. *Id*. The court found that theory was objectively unreasonable based on deposition testimony that showed a defendant "did not subjectively" believe the theory asserted in court. *Id*. at *15 n.87. The defendant's testimony also revealed the defendants decided not to enforce their agreements with the plaintiff because they "didn't want to get into more lawsuits." *Id*. at *17.

25

*Julian* is readily distinguishable from this case. Giardini testified that she subjectively and mistakenly believed Weyerhaeuser retained liability for Retired Employees. That testimony is undisputed. Unlike the *Julian* defendants, there was no gamesmanship here to avoid litigation. Moreover, Domtar provided the contractual reading that Giardini temporarily accepted, so it cannot assert the interpretation was objectively unreasonable or plainly mistaken.

The district court also stated that the *Textron* case, which involved a mistaken contract interpretation, would give it "pause in finding waiver," but ultimately found waiver anyway. (App. at 22-23.) *Textron* is remarkably similar to the case at hand. Textron was a multinational corporation that sold a segment of its business to a private equity firm, which later changed the segment's name to Acument. *Textron, Inc. v. Acument Global Tech., Inc.*, 2014 WL 2903060 at *2-7 (Del. Super. Ct. March 25, 2014).[6] After the complicated deal closed in August 2006, Acument operated under the mistaken belief that it could either reimburse Textron for hypothetical tax benefits attributable to indemnification claims or accept indemnity payments from Textron net of the hypothetical tax benefit. *Textron, Inc. v. Acument Global Tech., Inc.*, 2011 WL 1326842 at *3 (Del. Super. Ct. April 6, 2011). Acument

---

[6] The 2011 *Textron* order was a ruling on a motion for judgment on the pleadings. The 2014 order is the court's ruling after a bench trial.

26

discovered in May 2008 that the losses were not tax deductible, so its indemnity payments should not be offset. 2014 WL 2903060 at *15. Before it discovered the mistake, Acument made six payments to Textron based on the hypothetical (and mistaken) tax benefit. *Id*. at *18. The *Textron* Court rejected Textron's argument that Acument waived its rights by mistakenly making the payments. *Id*. at *18 n.232.

Just like Acument, Weyerhaeuser lacked sufficient knowledge to waive its rights because of a mistake in interpreting a complicated and large commercial transaction. Acument misunderstood U.S. tax law, and Weyerhaeuser—like Domtar—misunderstood the contractual allocation of workers compensation liability. Both are mistakes of law, and neither supports a waiver. The district court should have relied on *Textron* and *Moore* to hold for Weyerhaeuser.

**D.    Weyerhaeuser could legally retract a waiver at any time because Domtar was not prejudiced.**

Even if the Court concludes Weyerhaeuser waived its rights with respect to workers compensation claims, Weyerhaeuser retracted that waiver by 2012. In Delaware, a "waiving party may retract the waiver by giving reasonable notice to the non-waiving party before that party has suffered prejudice or materially changed his position." *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 27 A.3d 522, 530 (Del. 2011); *accord Cornerstone Equip. Leasing, Inc. v. MacLeod*, 247 P.3d 790, 796 (Wash. Ct. App. 2011) ("When a waiver is given

27

without consideration, the waiving party may reinstate the rights that have been waived upon reasonable notice that gives a reasonable opportunity to comply.").

Weyerhaeuser satisfied the *Amirsaleh* test to retract any waiver it made. Weyerhaeuser gave Domtar written notice in 2012 that it would enforce its rights to tender workers compensation claims to Domtar. Below, Domtar could not point to any harm it would suffer as a result. (App. 944-45 (stating Domtar "cannot say with certainty" that negotiations would have been different had Weyerhaeuser insisted Domtar perform the Sale contracts as written).) Domtar identified only speculative harm, which is insufficient to preclude a retraction of any waiver. Moreover, Domtar was not prejudiced during the time Weyerhaeuser stopped tendering workers compensation claims. To the contrary, Domtar *profited* from Weyerhaeuser's mistake because Weyerhaeuser paid approximately $9 million in workers compensation claims that were Domtar's responsibility.

The district court, however, modified the *Amirsaleh* test by grafting on a timeliness element that Delaware courts apply when parties seek to rescind a contract. To justify its modification, the district court cited two cases where, "Although not explicit, Delaware courts have considered delay in determining whether a waiver was rescinded." *Id.* (citing *Roam–Tel Partners v. AT & T Mobility Wireless Operations Holdings Inc.*, CIV A. No. 5745-VCS,

28

2010 WL 5276991, at *12 (Del. Ch. Dec. 17, 2010); *Textron*, 2014 WL
2903060, at *18 n.232). In doing so, the district court blended requirements for
legal and equitable relief and misapplied a timeliness analysis from Delaware
cases.

The only timeliness element for retraction is the requirement that the
notice be sent before the non-waiving party has suffered prejudice or materially
changes its position. The cases the district court cited as applying timeliness to
retraction are not apt. In *Roam-Tel*, the timeliness component related to the 20-
day statutory election period for minority stockholders to either accept merger
consideration or maintain appraisal rights. 2010 WL 5276991 at *3. Roam-Tel
initially waived its appraisal rights by accepting the consideration, but changed
its mind within the 20-day election period and returned the consideration to
AT&T. *Id*. at *2. The court found that was an effective rescission of waiver,
partially because Roam-Tel should have been allowed to change its mind within
the election period. *Id*. at *12. As for *Textron*, it took Acument nearly two
years after closing to discover its mistake, which is not meaningfully different
from the three years it took Weyerhaeuser to discover its mistake. Acument and
Weyerhaeuser acted with similar urgency, and neither forfeited their rights by
waiver.

Moreover, it is inappropriate to apply the timeliness element from rescission of contract to retraction of waiver.  Retraction and rescission are not the same thing.  Rescission occurs when a party seeks the equitable relief of unwinding a contract, while retraction of a waiver occurs when a party is seeking the legal relief of enforcing a contract.  The rescission cases the district court cited relied on the principle that parties seeking equitable relief must act promptly.  *See, e.g.*, *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, No. CIV.A. 4119-VCS, 2010 WL 363845, at *7 (Del. Ch. Jan. 27, 2010) ("Where equitable rescission of multi-faceted real estate transactions is sought, the party seeking rescission must move with alacrity.").  Courts require prompt action when seeking the equitable relief of rescission partially because it becomes more difficult to unwind an agreement as time passes.  *Id*.  In contrast, parties that seek legal relief must act within the statute of limitations.  *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, 372 A.2d 168, 169–70 (Del. 1976).

In this case, *the statute of limitations* would operate to prevent an untimely request for reimbursement from Domtar.  As discussed below, Domtar made a statute of limitations argument, and the district court applied it to bar claims it found to be untimely.  Domtar is not entitled to additional equitable relief from Weyerhaeuser's claims for reimbursement under the Sale contracts.

### E.    Acquiescence does not apply to the tender of future claims.

In discussing retraction of waiver, the district court also ruled that there is no support for finding that a party can retract an act of acquiescence, so its ruling would stand on acquiescence grounds even if the waiver was retracted. (App. 27.)  However, *Amirsaleh* establishes that waivers may be retracted, and acquiescence is a subset of waiver.  *Tenneco Auto. Inc. v. El Paso Corp.*, No. CIV. A. 18810-NC, 2004 WL 3217795, at *12 (Del. Ch. Aug. 26, 2004).  If acquiescence is a subset of waiver, and waivers can be retracted, then a party should be able to retract its acquiescence by satisfying the *Amirsaleh* test.

Additionally, because acquiescence is based on conduct and whether the acquiescing party "freely does what amounts to recognition of the complained of act" or "leads the other party to believe the act has been approved," it necessarily relates to past, not future, actions.  *Klaassen*, 106 A.3d at 1047.  In other words, to stop acquiescence from applying to a prospective act, one simply stops acquiescing.

In this case, that means that Domtar, at the very least, should be obligated to accept Weyerhaeuser's tenders from 2012 forward, after Weyerhaeuser recognized the parties' mistake and made it clear that the parties needed to perform the Sale contracts as written.  From that point forward, Weyerhaeuser had plainly stopped acquiescing to Domtar's continued breaches.

31

It is appropriate to analyze the tender of workers compensation claims on a claim by claim basis. Just as each breach of contract in a series of breaches is treated separately for statute of limitations purposes, each tender of separate workers compensation claims should also be treated separately. *See Price v. Wilmington Trust Co*., CIV A No. 12476, 1995 WL 317017 at *2-3 (Del. Ch. May 19, 1995). Domtar did not dispute that each workers compensation claim is subject to its own analysis within the statute of limitations context.

The district court, however, ruled that there is no case law supporting the proposition that Delaware law would apply a claim by claim analysis to the doctrine of waiver. The district court supported its conclusion by finding that performance of a contract is "generally considered a natural consequence flowing from the original decision" to enter into the contract, and not a wrong that can be segmented." (App. 22 (citing *Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 665 (Del. Ch. 2006); *In re Coca–Cola Enter., Inc*., No. 1927-CC, 2007 WL 3122370, at *5 (Del. Ch. Oct. 17, 2007).)

The district court misapplied how "natural consequences" operate in a statute of limitations context. The district court cited only to breach of fiduciary duty cases where the alleged breach was entering into a wrongful contract. *Teachers'*, 900 A.2d at 665–66; *Coca–Cola*, 2007 WL 3122370 at *6; *Hawkins v. MedApproach Holdings, Inc.*, No. 1:13-CV-05434 ALC DF,

2014 WL 3926811, at *5 (S.D.N.Y. Aug. 11, 2014).  In each case, the applicable court found the wrongful act was entering into the contract, not subsequent breaches of it, so in those cases, the harm arising from the wrongful contract was a "natural consequence" of entering the contract.

Here, Weyerhaeuser's harm was caused by distinct breaches of the Sale contracts each time Domtar rejected one of Weyerhaeuser's tenders.  The cases cited by the district court therefore do not conflict with the doctrine Weyerhaeuser asserts: where "continuing wrong[s] can be segmented, the applicable statute of limitations will apply to each alleged wrong and not to the course of wrongful conducts as a whole." *Price*, 1995 WL 317017, at *3. Indeed, when wrongs are distinct from the act of entering into a wrongful contract, parties may challenge the wrongs that fall within the statute of limitations.  *Teachers'*, 900 A.2d at 666.  "To hold otherwise would be to create a rule of law protecting inertial stupidity and perfidy." *Id*.

Domtar has been on clear notice since at least 2012 that Weyerhaeuser intended to enforce the Sale contracts as written, which included tendering workers compensation claims to Domtar.  Domtar agreed to bear that liability as part of the Sale, and has already experienced a windfall resulting from Weyerhaeuser's mistake.  Domtar would not be harmed if it is finally required to accept the liability it assumed when it bought Weyerhaeuser's fine paper

business in 2007.  Because each claim can be separated, Domtar should, at a

minimum, bear liability for the Retired Employees workers compensation claims

that were tendered after January 2012 and will be tendered in the future.

### F.    The parties' agreements tolled the statute of limitations.

The trial court dismissed Weyerhaeuser's claims that accrued prior to

January 2011, but that ruling did not properly account for the two contracts in

which the parties agreed to toll the statute of limitations.  Under Delaware law,

the statute of limitations can be waived or tolled by agreement.  *E.g.*, *Cheswold

Volunteer Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413,421 (Del. 1985).  In

2009 and again in 2013, the parties formally documented their mutual intent to

preserve unresolved disputes, including this workers compensation dispute, for

future resolution.  (App. 243-70, 294-99.)

For example, the parties expressly agreed in 2013 that responsibility for

workers compensation claims was an open and unresolved issue that the parties

would address at a later date.

> The parties intend to address issues relating to these Non-Addressed Workers Comp Claims at a later date after the Parties have finalized the population of claims to be included in a settlement. Pending the later addressing of those issues, the Parties reserve all rights with respect to the Non-Addressed Workers Comp Claims.

(App. 372.)  Like the 2009 contract, this agreement shows that the parties

recognized they had an ongoing dispute over the Retired Employees workers

34

compensation claims, and that Weyerhaeuser had not waived its rights. The parties also omitted any time limitation in their agreement, which shows the parties' intent to preserve their entire dispute, including claims that accrued before January 2011, for resolution at a later date. Under Delaware law, these agreements tolled the statute of limitations. *See E.I. duPont de Nemours & Co. v. Medtronic Vascular, Inc.*, No. CIV.A. N10C-09058MMJ, 2013 WL 261415, at *11 (Del. Super. Ct. Jan. 18, 2013), *as corrected* (Jan. 29, 2013) (recognizing Delaware law permits parties to agree to toll the statute of limitations for contract actions). Certainly paragraph 9 of the February 28, 2013 agreement, which explicitly states the parties' intended to resolve workers compensation claim liability in the future, renders Weyerhaeuser's claims that accrued after February 28, 2010 as timely.

The district court improperly applied Delaware law in dismissing Weyerhaeuser's pre-2011 claims. This ruling should be reversed.

## IX.    CONCLUSION

This Court should reverse the district court and hold that Domtar retains the same liability it agreed to assume when it entered into the Sale contracts, including complete responsibility for workers compensation claims by Retired Employees. The parties agreed that only written waivers would be enforceable, and there is no enforceable written waiver in this case. The period during which

the parties operated under the same mistaken understanding of the Sale contracts did not affect their rights because Delaware law, like other jurisdictions, recognizes that a mistake cannot be an intentional and voluntary relinquishment of a known right.

RESPECTFULLY SUBMITTED this 13th day of March, 2017.

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com

HILLIS CLARK MARTIN & PETERSON P.S.
Laurie Lootens Chyz, WSBA #14297
Jake Ewart, WSBA #38655

Attorneys for Plaintiff-Appellant,
Weyerhaeuser Company

36

## COMBINED CERTIFICATIONS

I, Stephen B. Brauerman, Esquire, hereby certify as follows:

(1)     That I am a member of the bar of the United States Court of Appeals for the Third Circuit;

(2)     This brief complies with the typevolume limitation because it contains 7,797 words as counted by Microsoft Word 2010;

(3)     The text of the electronic version of this Brief is identical to the paper copies of this Brief submitted to the Court; and

(4)     A virus detection program, Kaspersky Online Scanner has been run against the final PDF version of the brief prior to filing, and no virus was detected.

DATED this 13th day of March, 2017.

BAYARD, P.A.

 /s/ Stephen B. Brauerman

Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com

HILLIS CLARK MARTIN & PETERSON P.S.
Laurie Lootens Chyz, WSBA #14297
Jake Ewart, WSBA #38655

Attorneys for Plaintiff-Appellant,
Weyerhaeuser Company

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,797 words as counted by Microsoft Word 2010.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

RESPECTFULLY SUBMITTED this 13th day of March, 2017.

BAYARD, P.A.

/s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com

HILLIS CLARK MARTIN & PETERSON P.S.
Laurie Lootens Chyz, WSBA #14297
Jake Ewart, WSBA #38655

Attorneys for Plaintiff-Appellant,
Weyerhaeuser Company

# CERTIFICATE OF SERVICE

I electronically filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the Third Circuit by using the appellate

CM/ECF system on March 13, 2017.  I certify that all participants in the case

are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.  I further certify that one courtesy copy of the

foregoing brief and appendix were served upon all counsel of record by U.S.

Mail on March 14, 2017.

DATED this 13th day of March, 2017.

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com

HILLIS CLARK MARTIN & PETERSON P.S.
Laurie Lootens Chyz, WSBA #14297
Jake Ewart, WSBA #38655

Attorneys for Plaintiff-Appellant,
Weyerhaeuser Company