No. 16-4159

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

**WEYERHAEUSER COMPANY**

**Plaintiff-Appellant,**

**vs.**

**DOMTAR CORP. and DOMTAR PAPER COMPANY, LLC,**

**Defendants-Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

District Court Case No. 1:14-cv-00024-SLR

The Honorable Sue L. Robinson, District Judge

## APPENDIX VOLUME I
## (Pages 1-43)

BAYARD, P.A.
Stephen B. Brauerman
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

HILLIS CLARK MARTIN &
PETERSON P.S.
Laurie Lootens Chyz
Jake Ewart
999 Third Avenue, Suite 4600
Seattle, Washington 98104
(206) 623-1745

Counsel for Plaintiff-Appellant

## WEYERHAEUSER V. DOMTAR

### Appendix Table of Contents

| Document | Docket no. | App. page no. |
|---|---|---|
| **Appendix Volume I (pp. 1-43)** | | |
| 1. Notice of Appeal | 91 | 1 |
| 2. Judgment in a Civil Case (entered October 20, 2016) | 90 | 2 |
| 3. Order (entered August 31, 2016) | 89 | 3 |
| 4. Order (entered July 30, 2014) | 19 | 4 |
| 5. Memorandum Opinion (entered August 31, 2016) | 88 | 5-29 |
| 6. Memorandum Opinion (entered July 30, 2014) | 18 | 30-43 |
| **Appendix Volume 2 (SEALED) (pp. 44-313)** | | |
| 7. Declaration of Laurie Lootens Chyz in Support of Plaintiff Weyerhaeuser Company's Motion for Summary Judgment (SEALED) | 53 | 44-310 |
| 8. Declaration of Susan LaPrairie in Support of Plaintiff Weyerhaeuser Company's Motion for Summary Judgment (SEALED) | 54 | 311-313 |
| **Appendix Volume 3 (pp. 314-491)** | | |
| 9. Declaration of Courtney Dankworth in Support of Domtar's Motion to Dismiss for Failure to State a Claim | 14 | 314-486 |
| 10. Declaration of Anne Giardini in Support of Plaintiff Weyerhaeuser Company's Motion for Summary Judgment | 52 | 487-491 |

**Appendix Volume 4 (SEALED) (pp. 492-980)**

11. Declaration of Alex Ginsberg in Support of Defendants Domtar Corporation and Domtar Paper Company, LLC's Motion for Summary Judgment (SEALED)    57    492-917

12. Declaration of Gary W. Kubek in Support of Defendants Domtar Corporation and Domtar Paper Company, LLC's Answering Brief in Opposition to Weyerhaeuser Company's Motion for Summary Judgment (SEALED)    65    918-943

13. Declaration of Zygmunt Jablonski in Opposition to Weyerhaeuser Company's Motion for Summary Judgment (SEALED)    66    944-946

14. Declaration of Alex Ginsberg in Support of Defendants Domtar Corporation and Domtar Paper Company, LLC's Reply Brief in Support of Their Motion for Summary Judgment (SEALED)    76    947-980

# IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WEYERHAEUSER COMPANY, a Washington corporation<br><br>Plaintiff,<br><br>v.<br><br>DOMTAR CORPORATION, a Delaware corporation, and DOMTAR PAPER COMPANY, LLC, a Delaware limited liability company,<br><br>Defendants. | C.A. No. 14-00024-SLR |

## NOTICE OF APPEAL

Notice is hereby given that plaintiff Weyerhaeuser Company appeals to the United States Court of Appeals for the Third Circuit from (1) the Memorandum Opinion entered in this action on July 30, 2014, ECF Docket No. 18, (2) the Order entered in this action on July 30, 2014, ECF Docket No. 19, (3) the Memorandum Opinion entered in this action on August 31, 2016, ECF Docket No. 88, (4) the Order entered in this action on August 31, 2016, ECF Docket No. 89, and (5) the Judgment entered in this action on October 20, 2016, ECF Docket No. 90.

November 21, 2016

OF COUNSEL:

Laurie Lootens Chyz, WSBA #14297
Michael J. Ewart, WSBA #38655
Hillis Clark Martin & Peterson P.S.
999 Third Avenue, Suite 4600
Seattle, WA 98104
(206) 623-1745
laurie.chyz@hcmp.com;
jake.ewart@hcmp.com

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
sbrauerman@bayardlaw.com
emiller@bayardlaw.com

Attorneys for Plaintiff,
Weyerhaeuser Company

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WEYERHAEUSER COMPANY, a Washington corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 14-24-SLR ) |
| DOMTAR CORPORATION, a Delaware corporation, and DOMTAR PAPER COMPANY, LLC, a Delaware limited liability company, | ) ) ) ) ) |
| Defendants. | ) ) |

### JUDGMENT IN A CIVIL CASE

For reasons stated in the court's memorandum opinion and order of August 31, 2016;

IT IS ORDERED AND ADJUDGED that judgment be and is hereby entered in favor of defendants and against plaintiff.

_____
United States District Judge

Dated: 10/20/2016

_____
(By) Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WEYERHAEUSER COMPANY, a )
Washington corporation )
                                                    )
            Plaintiff, )
                                                    )
v.                                                  )    Civ. No. 14-24-SLR
                                                    )
DOMTAR CORPORATION, a Delaware )
corporation, and DOMTAR PAPER )
COMPANY, LLC, a Delaware limited )
liability company, )

            Defendant.

## **ORDER**

At Wilmington this 𝟛𝟙ˢᵗ day of August 2016, consistent with the memorandum

opinion issued this same date;

            IT IS ORDERED that:

            1. Plaintiff's motion for summary judgment (D.I. 50) is denied; and

            2. Defendant's motion for summary judgment (D.I. 55) is granted.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WEYERHAEUSER COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 14-024-SLR |
| | ) |
| DOMTAR CORPORATION and | ) |
| DOMTAR PAPER COMPANY, LLC, | ) |
| | ) |
| Defendants. | ) |

## O R D E R

At Wilmington this $30$ th day of July, 2014, consistent with the memorandum
opinion issued this same date;

IT IS ORDERED that Domtar's motion to dismiss (D.I. 12) is granted to the
extent that Weyerhaeuser's claims regarding liability for workers compensation claims
of Retired Employees that accrued prior to January 13, 2011 are barred by the
applicable statute of limitations. Otherwise, the motion is denied.



United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WEYERHAEUSER COMPANY, a<br>Washington corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 14-24-SLR |
| | ) | |
| DOMTAR CORPORATION, a Delaware<br>corporation, and DOMTAR PAPER<br>COMPANY, LLC, a Delaware limited<br>liability company, | ) | |
| | ) | |
| Defendants. | ) | |

Stephen B. Brauerman, Esquire and Evan T. Miller, Esquire of Bayard, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Laurie L. Chyz, Esquire and Michael J. Ewart, Esquire of Hillis Clark Martin & Peterson P.S., Seattle, Washington.

Gregory P. Williams, Esquire, Chad M. Shandler, Esquire, and Katharine C. Lester, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Defendants. Of Counsel: Gary W. Kubek, Esquire and Alex Ginsberg, Esquire of Debevoise & Plimpton LLP, New York, New York.

**MEMORANDUM OPINION**

Dated: August _31_ , 2016
Wilmington, Delaware

ROBINSON, District Judge

## I.    INTRODUCTION

In March 2007, plaintiff Weyerhaeuser Company ("Weyerhaeuser") sold its fine

paper business to Domtar Corporation and Domtar Paper Company, LLC (together,

"Domtar") pursuant to an Amended and Restated Contribution Agreement (the

"Contribution Agreement") and an Amended and Restated Transaction Agreement (the

"Transaction Agreement"). (D.I. 14, Exs. A-B)  After closing, disputes arose between

the parties regarding the operation of several contract terms.  Nevertheless, no lawsuit

was brought to resolve any dispute until January 2014, when Weyerhaeuser filed a

complaint contending that Domtar breached its contractual obligations regarding

workers compensation liabilities.  (D.I. 1)

The court held in a prior opinion, issued on July 30, 2014, that Section 2.03(a) of

the Contribution Agreement obligates Domtar to assume liability for workers

compensation claims of employees of the fine paper business who had retired or left

employment with Weyerhaeuser and thus never became employees of Domtar (the

"Retired Employees").[1]  (D.I. 18 at 8)  Domtar has raised two equitable defenses: waiver

and acquiescence.  Currently before the court are the parties' cross-motions for

summary judgment on Domtar's equitable defenses.  (D.I. 50, 55)  The court has

subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  For the

reasons discussed below, Weyerhaeuser's motion for summary judgment is denied and

Domtar's motion for summary judgment is granted.

---

[1]    Domtar asserts that this group of employees are more aptly called "Non-Transferred Employees."  (D.I. 56 at 4)  In the complaint and the court's previous opinion, they were called "Retired Employees."  (See, e.g., D.I. 18 at 8)

6

## II.    BACKGROUND

### A.    Relevant Contract Provision

The Contribution Agreement and Transfer Agreement were executed on January

25, 2007.  (D.I. 14, Exs. A-B)  Both agreements are governed by Delaware law.  (*Id.*)

Section 9.10 of the Contribution Agreement prohibits non-written waivers or

modifications to the agreement.  Specifically it states:

> Amendments. No provisions of this Agreement or any Ancillary
> Agreement shall be deemed waived, amended, supplemented or
> modified by any party, unless such waiver, amendment, supplement or
> modification is in writing and signed by the authorized representatives of
> (i) the Person against whom it is sought to enforce such waiver,
> amendment, supplement or modification, and (ii) if such waiver,
> amendment, supplement or modification occurs prior to the Effective
> Time, Domtar.

(D.I. 14, Ex. A. at 52)

### B.    Post-Closing Dispute

The sale of the fine paper business closed in March 2007.  (D.I. 56 at 3)  Almost

immediately thereafter, the parties disagreed about their obligations under the sale

contracts, including workers compensation liabilities.  (*Id.* at 4)  In April 2007,

Weyerhaeuser assigned $13,594,814 in workers compensation liability to Domtar, as

part of a proposed post-closing working capital adjustment.  (D.I. 51 at 4)  Domtar

objected that it never assumed that entire liability.  (D.I. 56 at 4-5)  In an email dated

April 23, 2007, Domtar employee Michael Cross told Weyerhaeuser that he had "done a

tour of the parish on this issue," and it was Domtar's "collective understanding that

[workers compensation] is not a liability that belongs to Domtar Corp."  (D.I. 51 at 4)

Weyerhaeuser disagreed, and told Domtar that Weyerhaeuser would make workers

compensation payments on Domtar's behalf until the issue was resolved.  (*Id.*)

2

7

On June 6, 2007, Domtar's general counsel, Gilles Pharand, wrote to Weyerhaeuser's general counsel, Sandy McDade, to memorialize its objection to the allocation of $13,594,814 in workers compensation liability to Domtar. (D.I. 51 at 4) According to Weyerhaeuser, "[w]hen McDade responded, he identified the contract provisions that assigned liability to Domtar, and outlined the same contract analysis later applied by the Court" in its July 2014 opinion. (*Id.*) Weyerhaeuser then began to invoice Domtar for workers compensation claims that included payments for Retired Employees. (D.I. 56 at 5) Domtar refused to pay these invoices. (*Id.*) Weyerhaeuser acknowledged in October 2007 that "Domtar and WY do not agree on the treatment of certain US workers compensation liabilities" and that "the issue remains to be resolved." (*Id.*)

## C. The September 11, 2008 Montreal Meeting

By mid-2008, Anne Giardini, general counsel for Weyerhaeuser's Canadian subsidiary, took over responsibility for negotiating the post-sale disputes. (D.I. 51 at 4) In a June 3, 2008 letter to Domtar, Giardini summarized Weyerhaeuser's positons on several open issues and asked for a meeting to discuss them. (D.I. 56 at 5) The letter reiterated Weyerhaeuser's position that the sale contracts allocated all workers compensation liability for fine paper employees to Domtar, and claimed that Domtar owed Weyerhaeuser $3,543,789 for workers compensation payments already made on Domtar's behalf. (D.I. 51 at 5)

Domtar responded on July 11, 2008. (*Id.*) Zygmunt Jablonski, Domtar's vice president for legal services, agreed to meet with Weyerhaeuser, and asked Giardini to explain how Weyerhaeuser was calculating workers compensation liability. (*Id.*) In a

3

follow up letter dated September 8, 2008, Jablonski told Giardini that Domtar had "assumed certain workers compensation claims with respect to the Transferred Employees," but that there was "no requirement anywhere in the Transaction Documents for Domtar to pay Weyerhaeuser for any accounting accrual for a Newco Liability." (*Id.*) In other words, Domtar agreed to make workers compensation payments for Transferred Employees, but it did not agree to accept responsibility for Retired Employees. (*Id.*)

On September 11, 2008, Domtar and Weyerhaeuser met in Montreal to discuss the open issues. (*Id.*) Weyerhaeuser was represented by Giardini and Patrick Lane, the transition manager for the sale. (D.I. 56 at 6) According to Weyerhaeuser, "Domtar took the position it unsuccessfully advanced in this litigation—that the Sale contracts made it responsible only for Transferred Employees." (D.I. 51 at 5) According to Domtar, Weyerhaeuser's representatives agreed at the meeting with Domtar's position, "but said they needed to discuss it further internally."[2] (D.I. 56 at 6) Weyerhaeuser does not dispute Domtar's assertion. At her deposition, Giardini testified that, during the meeting, she found Domtar's arguments persuasive. (D.I. 51 at 5)

On September 23, 2008, Giardini wrote Jablonski that, after making internal inquiries, she had been "advised that Weyerhaeuser has been invoicing Domtar only for Workers' Compensation for transferred employees." (D.I. 56 at 6) This was factually incorrect, which Giardini would later discover. In October 2008, Weyerhaeuser formally changed its accounting records to reflect a $9.2 million reduction in the workers

---

[2] Giardini testified that she would have spoken to Sandy McDade, Weyerhaeuser's U.S. general counsel, regarding what happened at the meeting. (D.I. 74 at 3)

compensation liability it claimed from Domtar and a $3.4 million decrease in the "outstanding WC receivable balance," because "a significant number of claims will remain with Weyerhaeuser." (D.I. 74 at 3-4) This accounting change was approved by Jeanne Hillman, Weyerhaeuser's chief accounting officer. (Id. at 4) That same month, Lane instructed the human resources department to notify Domtar that new invoices would be issued, because "workers compensation liability went to Domtar **only** for employees that showed up to work at Domtar." (D.I. 56 at 6-7 (emphasis in original))

On November 26, 2008, Giardini sent Jablonski a letter correcting her September 23 letter and confirming that prior invoices had improperly included claims by Retired Employees. (D.I. 56 at 7) She then stated, "In fact, we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar." (Id.) The letter is marked "without prejudice" in the header on the first page. (D.I. 51 at 6) Weyerhaeuser thereafter sent Domtar a list of only the Transferred Employees and issued revised invoices that included only claims for Transferred Employees. (Id.) For approximately three years after Giardini's letter, Weyerhaeuser invoiced Domtar only for claims filed by Transferred Employees, and Domtar paid those invoices. (D.I. 51 at 7)

At her deposition, Giardini explained that her statement in the November 26 letter was based on her mistaken interpretation of the Contribution Agreement. She testified: "The conclusion that workers' compensation liability went to Domtar only for employees that showed up to work at Domtar is mistaken advice from me ... based on ... [a] misreading of the agreements." (Id. at 6) Giardini said that she was focused on the wrong contract provisions. (Id.)

5

In June 2009, Giardini sent Jablonski a list of "issues for resolution" to be addressed at a proposed meeting (eventually held in December 2009). (D.I. 56 at 8) Under the heading "U.S. Employees on Workers Compensation," Giardini stated that administration of the workers compensation files remained at issue, but "all past workers compensation invoices have been reconciled." (*Id.*) Thus, Weyerhaeuser represented that liability for workers compensation was not an open issue. Settlement of the remaining issues were memorialized in a settlement agreement executed on December 21, 2009. (D.I. 53, Ex. O)

In January 2012, Weyerhaeuser resumed invoicing Domtar for Retired Employees workers compensation claims. (D.I. 51 at 8) Domtar rejected these invoices. (*Id.*) Weyerhaeuser did not explain what led to its change in position other than that it discovered its mistake interpreting the contract. (D.I. 67 at 4)

## III.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support that assertion by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## IV. DISCUSSION

The court has construed section 2.03(a) of the Contribution Agreement to mean that Domtar is obligated to pay the costs of workers compensation claims for Retired Employees. (D.I. 18 at 8) Domtar argues, however, that Weyerhaeuser waived this contractual right and acquiesced to Domtar's position that it was not responsible for these workers compensation claims. (D.I. 56 at 10-17) Because Weyerhaeuser raises the same arguments against both waiver and acquiescence, the court will address the defenses in parallel, rather than separately. The court, however, is not treating the defenses as interchangeable.

Before the court can address Weyerhaeuser's substantive arguments, it must resolve two preliminary issues: (i) whether Domtar can argue acquiescence when it did not plead the defense in its answer, as required by Fed. R. Civ. P. 8(c); and (ii) whether Section 9.10 of Contribution Agreement requires any waiver or acquiescence to be in writing. Neither issue eliminates Domtar's defenses. Thus, the court will establish the proper elements of waiver and acquiescence, determine whether waiver or acquiescence occurred here and, if so, whether the waiver was retracted.

### A. Rule 8(c): Preserved Defenses

Under Fed. R. Civ. P. Rule 8(c), an affirmative defense should be asserted in the appropriate responsive pleading.[3] *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001). But "the failure to do so does not automatically result in waiver." *Id.*

---

[3]     In a diversity of citizenship case, substantive state law determines what constitutes an affirmative defense, which in Delaware includes acquiescence. *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 321 n. 6 (3d Cir. 2006); *Norberg v. Sec. Storage Co. of Wash.*, 2000 WL 1375868, at *5 (Del. Ch. Sept. 19, 2000).

"Even though a motion for summary judgment is not the most appropriate way to raise a previously unpled defense," *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1374 (3d Cir. 1993), "a defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Eddy*, 256 F.3d at 209.

The court finds that Domtar raised its acquiescence defense at a pragmatically sufficient time. Weyerhaeuser was able to address acquiescence in its summary judgments briefs and, if necessary, can further respond to this defense at trial. *See Pantzer v. Shields Dev. Co.*, 660 F. Supp. 56, 61 (D. Del. 1986) (finding no prejudice where plaintiff was able to address the affirmative defense in its answering brief); *Kleinknecht*, 989 F.2d at 1374 (allowing unpled affirmative defense to be considered on summary judgment); *Charpentier v. Godsil*, 937 F.2d 859, 863–64 (3d Cir. 1991) (allowing unpled affirmative defense raised in post-trial motion).

In addition, Weyerhaeuser has not been prejudiced by Domtar's acquiescence arguments. Weyerhaeuser noted that "fact discovery has been closed for months," but did not claim that it would have sought any particular discovery different from what it already obtained. (D.I. 67 at 8) In fact, Weyerhaeuser made no claim of prejudice at all. This is unsurprising because, as the parties admit, waiver and acquiescence are doctrinally similar and rely upon the same facts. (*See* D.I. 67 at 9 n. 6 (Weyerhaeuser concedes that "Delaware courts have likened acquiescence to waiver"); D.I. 74 at 7 (Domtar asserts that it "relies upon the same facts to demonstrate both."))

Several Delaware cases demonstrate the lack of prejudice to Weyerhaeuser. In *Norberg v. Security Storage Company of Washington*, the court ruled against plaintiff on

the basis of acquiescence and waiver, even though neither were pled in the defendant's

answer. 2000 WL 1375868, at *1 (Del. Ch. Sept. 19, 2000). In that case, defendants

moved for summary judgment based only on acquiescence. Id. The court allowed the

defense to proceed, despite a rule equivalent to Fed. R. Civ. P. 8(c), because there was

no prejudice to plaintiff when the defense was based on his own conduct. Id. at *5. In

addition, the court ruled against plaintiff based on waiver, even though waiver was "not

argued by the parties in their briefs or at oral argument," because the same conduct that

supports acquiescence "also fits squarely within the doctrinal parameters of waiver."

Id.; see also Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc., 297 A.2d 28, 33

(Del. 1972) (acknowledging that the trial court ruled against plaintiffs based only on

waiver but affirming based on acquiescence because the factual findings supported

acquiescence). The cases of Norberg and Pepsico support the court's conclusion that,

although Domtar's actions do not conform to best litigation practices, it has not waived

its acquiescence defense.[4]

## B.    Section 9.10: Writing Requirement

Weyerhaeuser argues that Section 9.10 of the Contribution Agreement requires

any waiver or acquiescence to be in writing. (D.I. 51 at 13; D.I. 67 at 9) That section

states that no provision of the contract "shall be deemed waived, amended,

---

[4]      For the same reasons, an equitable estoppel defense could be asserted. In
Eureka VIII LLC v. Niagara Falls Holdings LLC, the court noted that a plaintiff could be
equitably estopped from asserting a contract right it misinterpreted. 899 A.2d 95, 108 n.
25 (Del. Ch. 2006). As the court explained, "[t]he parties frame this issue as one of
waiver, but it might more aptly be thought an issue of equitable estoppel." Id. "Eureka
was entitled to prevent this transfer without its consent, but an authorized statement by
its agent that its consent was not required might preclude it from enforcing this right."
Id.

10

supplemented or modified" unless the waiver "is in writing and signed" by an authorized representative of the waiving party. (D.I. 14, Ex. A) Section 9.10, by its own terms, does not mention acquiescence, only waiver. Nevertheless, Weyerhaeuser contends that Section 9.10 is equally applicable to acquiescence, because acquiescence is a type of waiver.[5] (D.I. 67 at 8-9) Assuming Section 9.10 is applicable to acquiescence, the court finds that the writing requirement can be waived for the same reasons it could always be waived with respect to waiver.[6]

Delaware law allows a no oral waiver provision to be waived by oral statements or conduct. As then-Vice Chancellor, now Chief Justice, Strine explained, "it is settled law that contract provisions deeming oral modifications unenforceable can be waived orally or by a course of conduct just like any other contractual provision." *Eureka VIII LLC v. Niagara Falls Holdings LLC*, 899 A.2d 95, 109 n.26 (Del. Ch. 2006) (quoting *Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1229 (Del. Ch. 2000)). "If a provision requiring written modifications can be waived orally, then, it stands to reason that a provision requiring written waiver can be waived orally." *Id.* Accordingly, irrespective of a clear contractual provision requiring that waivers be made in writing,

---

[5] *See Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 584 (Del. Ch. 1998) ("Acquiescence is a species of waiver." (quoting *Frank v. Wilson & Co.*, 9 A.2d 82, 87 (Del. Ch. 1939)); *Tenneco Auto. Inc. v. El Paso Corp.*, 2004 WL 3217795, at *12 (Del. Ch. Aug. 26, 2004) (stating that acquiescence is best viewed as a subset of waiver).

[6] The only authority Weyerhaeuser cites in support of its argument that Section 9.10 applies to acquiescence, *Cantor Fitzgerald, L.P. v. Cantor*, is not conclusive. (D.I. 75 at 5) That case addressed the issue in the context of a preliminary injunction motion, meaning the court did not definitively conclude that a waiver provision applies to acquiescence, but only thought it was likely. *Cantor*, 724 A.2d 571, 584 (Del. Ch. 1998).

11

16

the court may consider whether Weyerhaeuser waived its contract rights under Section 2.03(a) or acquiesced to Domtar's positon through oral statements or conduct.

Weyerhaeuser cites two unavailing cases in support of its position that Delaware law strictly enforces no oral waiver provisions: *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F.Supp.3d 613 (D. Del. 2015), and *Marta v. Mutual Life Insurance Co. of N.Y.*, 887 F. Supp. 722, 727 (D. Del. 1995). In *Phunware*, the Delaware District Court found that "[a] waiver would only be effective if made in writing." 117 F.Supp.3d at 626. The court, however, was not construing the same contract provision at issue here.[7] *Marta* is equally unavailing, because it involved the application of the statute of frauds to an oral modification of a contract for the sale of land. 887 F. Supp. at 726. Accordingly, the court will defer to the approach taken by the Delaware courts construing the same contract language at issue here. *See*, *e.g.*, Eureka, 899 A.2d at 108 (stating that parties could orally waive a contract provision stating that "this Agreement may not be amended or supplemented, and no provisions hereof may be modified or waived, except by an instrument in writing signed by each of the Members").

Finally, Weyerhaeuser correctly notes that "Delaware is a pro-contractarian state." (D.I. 67 at 3) In *Eureka*, Chief Justice Strine noted the cognitive dissonance between this fundamental principal of Delaware law and allowing no oral waiver provisions to be waived orally. 899 A.2d at 109. He found, however, that any concerns with undermining the reliability of written contracts was mitigated by the fact that

---

[7]     There, the provision stated, in relevant part, that "no failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or of the exercise of any other right, power or privilege." *Id.*

Delaware law raises the level of proof for oral waiver "from mere preponderance to clear and convincing evidence." *Id.*

## C. Waiver and Acquiescence

The parties agree on the elements of waiver but dispute the elements of acquiescence. (D.I. 67 at 9-11) Accordingly, the court will set forth the elements of waiver and resolve the parties' dispute regarding the elements of acquiescence. Next, Weyerhaeuser argues that no acquiescence or waiver occurred, because: (1) Weyerhaeuser misinterpreted the contract when it agreed to Domtar's positon; and (2) the November 26 letter includes the label "without prejudice." (D.I. 67 at 3-4, 6-7, 8-9) Those arguments are insufficient to prevent a waiver or acquiescence defense for the reasons explained below. Thus, the court will identify the statements and conduct demonstrating waiver and acquiescence. Finally, the court will address whether any waiver was retracted.

### 1. The elements of waiver and acquiescence

Delaware law defines the elements of waiver and acquiescence as applied in this case. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011) ("A federal court sitting in diversity must apply state substantive law ...."). Under Delaware law, "[w]aiver is the voluntary and intentional relinquishment of a known right." *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005) (quoting *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)). A party claiming waiver must show that: (1) there is a requirement or condition to be waived; (2) the waiving party knows of the requirement or condition; and (3) the waiving party intended to waive that requirement or condition. *Id.* Waiver must be

13

proven with "clear and convincing evidence." *Eureka*, 899 A.2d at 109; *see also AeroGlobal*, 871 A.2d at 444 ("The facts relied upon to prove waiver must be unequivocal."). "The question of waiver is normally a jury question, unless the facts are undisputed and give rise to only one reasonable inference." *Mergenthaler v. Hollingsworth Oil Co. Inc.*, 1995 WL 108883, at *2 (Del. Super. Feb. 22, 1995).

Acquiescence occurs where a plaintiff "has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved." *Klaassen v. Allegro Dev.*, 106 A.3d 1035, 1047 (Del. 2014) (quoting *Cantor*, 724 A.2d at 582). "For the defense of acquiescence to apply, conscious intent to approve the act is not required, nor is a change of position or resulting prejudice." *Klaassen*, 106 A.3d at 1047.

Despite the clear pronouncements of the Delaware Supreme Court in *Klaassen*, Weyerhaeuser argues that acquiescence requires both intent and detrimental reliance. (D.I. 67 at 9-11) The court is not convinced. Weyerhaeuser is correct that, in *Julin v. Julin*, the Delaware Supreme Court stated that acquiescence depends "on an evaluation of the knowledge, intention and motivation of the acquiescing party." 787 A.2d 82, 84 (Del. 2001). But this statement in *Julin* appears to be an aberration arising in the context of a family law dispute, without citation to any precedent, and inconsistent with other Delaware cases. Moreover, *Julin* came out several years before *Klaassen*.

In the other case cited by Weyerhaeuser, *Lehman Brothers Holdings Inc. v. Spanish Broadcasting System, Inc.*, Vice Chancellor Glasscock stated that a defendant

will prevail on an acquiescence defense only if she shows, among other factors, that she "relied to her detriment on the plaintiff's silence." 2014 WL 718430, at *9 (Del. Ch. Feb. 25, 2014). *Lehman Brothers*, however, was issued one month before *Klaassen*. Vice Chancellor Glasscock later acknowledged that the Supreme Court's decision in *Klaassen* "appears to have rendered some of these factors [set forth in *Lehman Brothers*] superfluous to an acquiescence analysis." *Brevan Howard Credit Catalyst Master Fund Ltd. v. Spanish Broad. Sys., Inc.*, 2015 WL 2400712, at *3 n. 7 (Del. Ch. May 19, 2015). Accordingly, the court will not consider Weyerhaeuser's intent or Domtar's detrimental reliance in connection with the acquiescence defense.

## 2. Effect of contract misinterpretation

Weyerhaeuser argues that it neither waived its contract rights nor acquiesced to Domtar's position regarding Retired Employees' workers compensation claims, because it made a mistake interpreting the contract. (D.I. 67 at 10; D.I. 51 at 12) Delaware courts, however, have found that a party waived a contract right even though they were mistaken as to the operation of the contract, because they were aware of the potential for mistake.

In *Julian v. Eastern States Construction Service, Inc.*, three brothers were shareholders, officers, and directors in three closely held corporations named ESCS, ESDC, and Benchmark. 2008 WL 2673300, at *1 (Del. Ch. July 8, 2008). As the court construed the relevant agreement, Benchmark had the immediate right to force the brother Gene to sell his stock back to the company when he stopped working for Benchmark sometime in 2003. *Id.* at *11. Benchmark, however, did not demand a resale of stock until December 2005, when Gene purported to retire from ESCS and

15

20

ESDC. *Id.* Gene argued that the delay in enforcing the buyback provision resulted in waiver. *Id.* at *14. The court agreed. *Id.* at *17.

The evidence showed that as of April 2003, "Benchmark knew of, and intentionally chose not to enforce" the buyback provision. *Id.* at *16. It acted on the "mistaken" belief that as long as Gene was employed by at least one of the three businesses, he could retain his stock in all the entities, and would only be required to sell his Benchmark stock back when he stopped working for all three companies. *Id.* at *15. But Benchmark was also aware of an "arguable basis" for insisting on the immediate buyback of Gene's Benchmark stock at the time he left that company. *Id.* at *16-17. Because Benchmark failed to enforce that claimed right "in a timely fashion," it waived the right to enforce the buyback provision at all. *Id.* at *17.

In *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, plaintiffs had long term contracts with defendant, called appointments, to purchase concentrate, the syrup used to make Pepsi. 282 A.2d 643, 644 (Del. Ch. 1971). The appointments had price provisions that prohibited increases to the price of concentrate unless the changes were due to increases in the cost of "materials, ingredients, crowns and labels." 297 A.2d 28, 30 (Del. 1972). Defendant made several changes over the years to the price of its concentrate that were not in conformity with terms of the contract, and plaintiffs never objected until it filed the lawsuit. *Id.* at 31.

The trial court found that not only did plaintiffs pay invoices based on prices at odds with the terms of the contract, but defendant's notices regarding the price changes "clearly put the plaintiffs on notice that they were no longer doing business with defendant" in conformity with the contract terms. 282 A.2d at 649-50. Having

16

21

conformed to defendant's notices rather than standing firm on their appointments, plaintiffs effectively waived their rights under the original appointments. *Id.* at 650. Although the trial court ruled on the basis of waiver, the Supreme Court found that "the acceptance by the plaintiffs of the periodic price changes made by [defendant] was evidence of acquiescence." 297 A.2d at 33. Accordingly, the Supreme Court affirmed the trial court's ruling on the basis of acquiescence. *Id.* at 32-33.

Weyerhaeuser essentially argues that it must know that Domtar's interpretation is incorrect before it can be found to knowingly and intentionally waive its contract rights. (D.I. 67 at 5-7; D.I. 51 at 13). It makes the same argument with respect to acquiescence. (D.I. 67 at 10) But what *Julian* and *Pepsico* demonstrate is that Weyerhaeuser did not have to know for certain that Domtar's interpretation was incorrect before it could waive its contract rights or acquiesce to Domtar's incorrect interpretation. Rather, it is sufficient that Weyerhaeuser knew that there was an "arguable basis" that Domtar's interpretation was incorrect and yet proceeded to accept Domtar's interpretation anyway.[8]

The case of *Textron, Inc. v. Acument Global Technologies, Inc.* demonstrates the type of "mistake" regarding the operation of a contract provision that would give the

---

[8]     Weyerhaeuser has pointed to no Delaware case addressing the effect of a mistaken contract interpretation on waiver of a contract right. (*See* D.I. 51 at 12; D.I. 75 at 3-4)  The closest case it cites is *Moore v. Travelers Indem. Ins. Co.*, 408 A.2d 298, 302 (Del. Super. 1979) (addressing a mistaken payment under a lapsed insurance policy).  Accordingly, the cases on which Weyerhaeuser relies are unavailing.  In addition, Weyerhaeuser's discussion of mutual mistake of law is not applicable. (D.I. 75 at 4).  That doctrine is invoked when a party seeks to rescind a contract, not enforce it, as Weyerhaeuser has asked the court to do. *See Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A.*, 103 A.3d 1010, 1016 (Del. 2014).

court pause in finding waiver. 2011 WL 1326842 (Del. Super. Apr. 6, 2011). Plaintiff Textron sold a business segment, later renamed Acument, to a private equity firm. *Id.* at \*1. After closing, Acument repeatedly reimbursed Textron, or allowed Textron to withhold, portions of indemnity payments for loses within the United States based on a hypothetical tax benefit. *Id.* at \*3. Acument had always believed that it must be entitled to an actual tax benefit before Textron was entitled to an offset. *Id.* at \*4. Acument had "the mistaken impression that it had a right to deduct the losses on its [United States] tax returns." *Id.* When Acument learned it was wrong, it began to object to Textron's offset. *Id.* at \*5. The court found that, under those circumstances, Acument had always acted consistent with its interpretation of agreements. *Id.* at \*6. Thus, the court was not prepared to find that Acument had waived its contract rights. *Id.* Here, Weyerhaeuser has not pointed to any similar mistake that led it to take actions that appeared consistent with Domtar's position, but were actually consistent with its own position. Instead, Weyerhaeuser has merely stated that its earlier conduct was due to an "interpretive mistake." (D.I. 67 at 4)

### 3. Effect of "without prejudice" label

Weyerhaeuser argues that Giardini's November 26 letter was "for negotiation purposes only" and that "the recipient could not rely on the letter unless it was later confirmed by a formal written agreement." (D.I. 51 at 14) The letter itself contains neither of those caveats, but Weyerhaeuser contends that such limitations should be inferred from the legend "without prejudice" on the first page of the letter.

The phrase "without prejudice" is not commonly used by U.S. lawyers, but is sometimes used by Canadian lawyers to designate a position as non-binding and

18

privileged against use in litigation. Domtar provided several Canadian authorities holding that a "without prejudice" label is not strictly enforced, but instead must be evaluated in light of the communication's purpose and context. *See Gaglardi v. Gaglardi*, 1992 CarswellBC 709, para. 16 & 20 (Can. B.C.S.C.) (D.I. 57, Ex. 35) (allowing plaintiff to rely on defendant's letter marked "without prejudice" because tone of letter indicates acceptance on part of defendant that plaintiff has a valid claim); *Leonardis v. Leonardis*, (2003) 50 Alta. L.R. 4th 56, para. 3 (Can. Alta. Q.B.) (D.I. 57, Ex. 36) (explaining that communications marked without prejudice "may be used to prove the fact of and contents of a contract"); *see also* Adam Dodek, "Solicitor-Client Privilege in Canada," at 10 (February 2011) (D.I. 57, Ex. 38) (explaining that the label "Without Prejudice" is often overused by lawyers and in and of itself does not guarantee that the correspondence cannot be relied upon). It appears that Delaware courts have similarly not taken a bright-line approach with respect to boilerplate labels. *See Balin v. Amerimar Realty Co.*, 1995 WL 170421, at *9 (Del. Ch. Apr. 10, 1995) (explaining that the court will not blindly adopt a party's "strictly confidential" label without considering the documents' contents).

The November 26 letter sets forth several positions with respect to then-unresolved issues that could properly be subject to a "without prejudice" disclaimer. But the statements with respect to workers compensation liabilities were not a mere negotiation proposal. Instead, Giardini was confirming that all the proper authorities within Weyerhaeuser had signed-off on her preliminary agreement in Montreal to Domtar's positon. Weyerhaeuser claims that Giardini "did not intend letters marked 'Without Prejudice' to be letters Domtar could or would rely on to Weyerhaeuser's

19

24

detriment." (D.I. 67 at 6) But Weyerhaeuser has not provided any case law supporting the proposition that a writer's subjective intent determines the enforceability of the disclaimer. Accordingly, the court has no legal basis to hold that a single, boilerplate disclaimer on Giardini's November 26 letter is sufficient, by itself, to outweigh Weyerhaeuser's multitude of oral and written statements and years of conduct consistent with Domtar's interpretation of Section 2.03(a).

### 4. Weyerhaeuser demonstrated waiver and acquiescence

There is no doubt that, at the time Weyerhaeuser first demonstrated waiver or acquiescence in 2008, it had full knowledge of its contractual right under Section 2.03(a) to impose liability on Domtar for Retired Employees' workers compensation claims. As Weyerhaeuser itself admits, in June 2007, its general counsel responded to Domtar's objections by "identif[ying] the contract provisions that assigned liability to Domtar, and outlin[ing] **the same contract analysis** later applied by the Court" in its July 30, 2014 opinion finding Domtar responsible for Retired Employees' workers compensation claims. (D.I. 51 at 4) Weyerhaeuser also admits that in the September 2008 Montreal meeting, "Domtar took the position it unsuccessfully advanced in this litigation—that the Sale contracts made it responsible only for Transferred Employees." (D.I. 51 at 5) Thus, Weyerhaeuser knew not only the relevant contract provisions, but an "arguable basis" for insisting on its interpretation of Section 2.03(a). As a result, Weyerhaeuser's temporary misinterpretation of the contract does not prevent waiver or acquiescence.

Over the course of several years, Weyerhaeuser's legal, finance, and human resources departments engaged in a continuous, conscious, and voluntary course of action consistent with Domtar's interpretation of Section 2.03(a) and inconsistent with its own rights. In September 2008, authorized representatives of Weyerhaeuser orally

20

expressed agreement with Domtar's position at a meeting in Montreal, but indicated that others within Weyerhaeuser would also have to sign-off before it was official. (D.I. 56 at 6) Giardini then confirmed in a November 26 letter to Domtar that everyone within Weyerhaeuser who needed to sign off on the decision was in agreement that "US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar [i.e., Transferred Employees]." (D.I. 56 at 7) Weyerhaeuser formally revised its accounting records to reflect a decrease in the workers compensation liability it claimed from Domtar. (D.I. 74 at 3-4) Weyerhaeuser also revised, processed, and paid invoices consistent with Domtar's position. (D.I. 56 at 13) A list of issues for resolution prepared in June 2009 by Giardini did not include workers compensation claims because, as Giardini explained at the time, "all past workers compensation invoices have been reconciled." (D.I. 56 at 8) This course of conduct between the parties — the material facts of which are undisputed — demonstrates that Weyerhaeuser knowingly and intentionally waived its right to reimbursement from Domtar for Retired Employees' workers compensation claims or acquiesced to not enforcing that right.

Finally, Weyerhaeuser relies on case law addressing the statute of limitations to claim that each individual workers compensation claim paid pursuant to Section 2.03(a) is subject to its own separate waiver analysis, such that the company may have waived its right to seek reimbursement for some claims made in the past, but not other claims it may make in the future. (D.I. 51 at 15 (citing *Price v. Wilmington Trust Co.*, 1995 WL 317017 at *2 (Del. Ch. May 19, 1995)). Weyerhaeuser, however, has provided no case law supporting its proposition that Delaware law would graft this concept from its statute

21

26

of limitations analysis onto the doctrine of waiver. Regardless, even within the statute of limitations analysis, performance under a contract "is generally considered a natural consequence flowing from the original decision" to enter into the contract, and not a wrong that can be segmented. *Teachers' Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 665 (Del. Ch. 2006); *In re Coca-Cola Enter., Inc.*, 2007 WL 3122370, at *5 (Del. Ch. Oct. 17, 2007) (holding that plaintiff's cause of action accrued at the time the corporation entered into a contract 20 years prior, not at the time of each individual act performed pursuant to rights under the contract); *Hawkins v. MedApproach Holdings, Inc.*, 2014 WL 3926811, at *5 (S.D.N.Y. Aug. 11, 2014) (holding that performance under a Delaware contract, including receipt of fees, is a "natural consequence" of the execution of the documents). Thus, the court finds no reason to slice the waiver analysis as finely as Weyerhaeuser seeks.

### 5. Retracting waiver

Weyerhaeuser argues that, in January 2012, it retracted any waiver of Section 2.03(a). (D.I. 51 at 15; D.I. 67 at 7-8) Weyerhaeuser provides no authority addressing whether acquiescence can ever be retracted, and the court is not aware of any. Thus, the court's ruling based on acquiescence would still stand even if Weyerhaeuser effectively retracted its waiver. Nevertheless, the court will explain why no retraction occurred here.

A "waiving party may retract [a] waiver by giving reasonable notice to the non-waiving party before that party has suffered prejudice or materially changed his position." *Amirsaleh v. Bd. of Trade of N.Y., Inc.*, 27 A.3d 522, 530 (Del. 2011). The court is most concerned with the fact that Weyerhaeuser has waited over three years to

22

27

retract its waiver, when it knew or should have known by 2008 all materials facts necessary to discover its interpretative mistake.[9]  It is well established under Delaware law that a party cannot rescind a contract if they unreasonably delayed.  *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 174 (Del. 2000) (holding that rescission was not available where a plaintiff had "substantially and unjustifiably delayed" in waiting two years before seeking rescission); *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *7 (Del. Ch. Jan. 27, 2010) (explaining that "the party seeking rescission must move with alacrity"); *Gaffin v. Teledyne, Inc.*, 1990 WL 195914, at *18 (Del.Ch. Dec. 4, 1990) ("It is a well-established principle of equity that a plaintiff waives the right to rescission by excessive delay in seeking it.").  If unjustifiable delay prevents rescission of a contract, then it stands to reason that unjustifiable delay would prevent rescission of a waiver of a contract.

Although not explicit, Delaware courts have considered delay in determining whether a waiver was rescinded.  *See Roam-Tel Partners v. AT&T Mobility Wireless Operations Holdings Inc.*, 2010 WL 5276991, at *12 (Del. Ch. Dec. 17, 2010) (holding that a stockholder rescinded its waiver of appraisal rights when it "promptly" returned the merger consideration); *Textron, Inc. v. Acument Global Tech., Inc.*, 2014 WL 2903060, at *18 n. 232 (Del. Super. Mar. 25, 2014) (finding Acument did not waive its contractual rights despite making payments for a year contrary to those rights, because

---

[9]      Under the equitable defense of laches, after the statute of limitations has run, as it has here, "defendants are entitled to repose and are exposed to prejudice as a matter of law by a suit by a late-filing plaintiff who had a fair opportunity to file within the limitations period."  *In re Sirius*, 2013 WL 5411268, at *4 (Del. Ch. Sept. 27, 2013); *Kraft v. WisdomTree Investments, Inc.*, 2016 WL 4141112, at *6 (Del. Ch. Aug. 3, 2016) ("The Court also may presume prejudice if the claim is brought after the analogous limitations period has expired.").

Acument did not delay in discovering its mistake and notified Textron promptly once the mistake was discovered). Accordingly, the court finds that no waiver was retracted because Weyerhaeuser unjustifiably delayed in giving reasonable notice to Domtar.

## V. CONCLUSION

For the foregoing reasons, Weyerhaeuser's motion for summary judgment (D.I. 50) is denied, and Domtar's motion for summary judgment (D.I. 55) is granted.[10] An appropriate order shall issue.

---

[10] In its opening brief, Weyerhaeuser said it had been left with responsibility for administering workers compensation claims made by Transferred Employees, and covering the cost of that administration but, under the sale contracts, Domtar is responsible for all aspects of these claims — including administration. (D.I. 51 at 9) Domtar never responded to this assertion. Accordingly, this opinion does not resolve the parties' dispute, if any, regarding administration of the Transferred Employees' workers compensation claims. If there are no remaining disputes for the court to resolve, the parties should jointly notify the court that the case can be closed and judgment entered.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WEYERHAEUSER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 14-024-SLR |
| | ) | |
| DOMTAR CORPORATION and | ) | |
| DOMTAR PAPER COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Stephen B. Brauerman, Esquire and Evan T. Miller, Esquire of Bayard, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Laurie L. Chyz, Esquire, and Michael J. Ewart, Esquire of Hillis Clark Martin & Peterson P.S.

Gregory P. Williams, Esquire, Chad M. Shandler, Esquire, and Katharine C. Lester, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware. Counsel for Defendants. Of Counsel: Gary W. Kubek, Esquire and Courtney M. Dankworth, Esquire of Debevoise & Plimpton LLP.

_____

**MEMORANDUM OPINION**

Dated: July 30, 2014
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On January 13, 2014, plaintiff Weyerhaeuser Company ("Weyerhaeuser") filed a complaint against defendants Domtar Corporation and Domtar Paper Company, LLC (collectively, "Domtar") alleging breach of contract with respect to liability for workers compensation claims. (D.I. 1) On February 21, 2014, Domtar filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 12) The court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. BACKGROUND

Weyerhaeuser sold its fine paper business to Domtar (the "Sale") on March 7, 2007. (D.I. 1 at ¶ 8) The Sale was governed by an Amended and Restated Contribution Agreement (the "Contribution Agreement") and an Amended and Restated Transaction Agreement (the "Transaction Agreement") (collectively, "the Agreements").[1] (D.I. 14, exs. A-B) The Agreements are dated January 25, 2007 and are governed by Delaware law. (*Id.*) Since the Sale, the parties have on multiple occasions reached settlement agreements relating to post-Sale disputes. (D.I. 1 at ¶¶ 43-44) However, the parties have been unable to resolve the contested issue of workers compensation liability. (*Id.* at ¶ 45)

---

[1] Weyerhaeuser accomplished the Sale, in part, by transferring its fine paper business to Domtar Paper Company, LLC, and then transferring ownership of Domtar Paper Company, LLC to Domtar Corporation. (D.I. 1 at ¶ 9) Domtar Paper Company, LLC was created by Weyerhaeuser in August 2006 specifically to hold the fine paper business for the purposes of the Sale and is referred to as "Newco" in the Agreements. (*Id.* at ¶ 10; D.I. 14, ex. A at 1)

There are three categories of current and former fine paper employees relevant to the action at bar. (*Id.* at ¶ 24) The first category consists of fine paper employees who worked for Weyerhaeuser before the Sale and continued to work for Domtar after the Sale (the "Transferred Employees"). (*Id.*) The second category consists of fine paper employees who were still employed at Weyerhaeuser at the time of the Sale but who were receiving workers compensation benefits and, therefore, not working at the time of the Sale (the "U.S. WC Newco Employees"). (*Id.* at ¶ 26) The third category consists of the remainder of Weyerhaeuser's pre-Sale employees, including those who were retired or otherwise terminated before the time of the Sale and, therefore, never became Transferred Employees (the "Retired Employees"). (*Id.* at ¶ 30) The parties dispute liability for workers compensation claims regarding the third category of employees, the Retired Employees, as well as liability for administration costs of workers compensation claims regarding the first category of employees, the Transferred Employees.[2]

## III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain

---

[2]Domtar accepts responsibility for all workers compensation claims asserted by Transferred Employees (D.I. 13 at 2; D.I. 14, ex. A at § 2.03(a)(vii)), but contests Weyerhaeuser's asserted administration costs. (D.I. 13 at 9) The parties also agree that Weyerhaeuser retained all post-Sale workers compensation liability for U.S. WC Newco Employees unless, and until, those employees became Transferred Employees. (D.I. 1 at ¶ 28; D.I. 14, ex. B at § 6.09(a)(iii)) At the time of the Sale, there were approximately twelve U.S. WC Newco Employees, three of which later became Transferred Employees by returning to work for Domtar. (D.I. 1 at ¶ 29)

2

"a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a two-part analysis when reviewing a Rule 12(b)(6) motion. *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler*, 578 F.3d. at 210-11. Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

The court's determination is not whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims."

3

33

*United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. DISCUSSION

### A. Liability for Workers Compensation Claims of Retired Employees

Weyerhaeuser alleges that the Sale was structured to transfer from Weyerhaeuser to Domtar all assets and liabilities of the fine paper business except those expressly retained by Weyerhaeuser in the Agreements. (D.I. 1 at ¶ 11) Since workers compensation liability for Retired Employees was not expressly retained by Weyerhaeuser, it alleges that such liability transferred to Domtar through the Sale. (*Id.* at ¶ 36) Domtar argues that based on the provisions of the Agreements, Weyerhaeuser retained liability for workers compensation claims of Retired Employees, and its breach of contract claim should be dismissed. (D.I. 13 at 4)

Under Delaware law, "to survive a motion to dismiss for failure to state a breach of contract claim, [a] plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citations omitted).

4

Weyerhaeuser satisfies the first requirement since neither party disputes that the

Agreements are valid, express contracts governing the Sale of the fine paper business.

(D.I. 13 at 2; D.I. 14, exs. A-B)  Weyerhaeuser also satisfies the third requirement by

claiming that it has incurred approximately $8.2 million in damages as a result of

Domtar rejecting or failing to respond to each workers compensation tender from

Weyerhaeuser regarding Retired Employees.[3]  (D.I. 1 at ¶¶ 39-40, 46)  Further,

Weyerhaeuser projects that future claims asserted by Retired Employees will likely

reach or exceed $6.1 million.  (*Id.* at ¶ 47)  The dispute at bar concerns the second

requirement – a breach of an obligation imposed by the contract – and hinges on how

the Agreements are interpreted.

The operative provision of the Contribution Agreement governing Newco

Liabilities is Section 2.03(a), which states:

> For the purposes of this Agreement, "Newco Liabilities" shall
> mean all obligations, liabilities and commitments of any
> nature, whether known or unknown, express or implied,
> primary or secondary, direct or indirect, liquidated, absolute,
> accrued, contingent or otherwise and whether due or to
> become due ("Liabilities"), of Weyerhaeuser or any other
> member of Weyerhaeuser Group arising out of or primarily
> relating to the Newco Assets, the Newco Business or the
> operation or conduct of the Newco Business prior to, on or
> after the Contribution Date, excluding the Retained
> Liabilities, which Newco Liabilities **shall include** (in each
> case, other than the Retained Liabilities): . . .

---

[3]Weyerhaeuser has itself administered, paid, and resolved Retired Employee
workers compensation claims in order to ensure that such obligations to Retired
Employees do not go unmet.  (D.I. 1 at ¶¶ 40-41)

(D.I. 14, ex. A at Section 2.03(a)) (emphasis added) Subsections 2.03(a)(i)-(xi) list Newco Liabilities that Domtar irrevocably assumed.[4] The following section, Section 2.03(b), states, "[f]or purposes of this Agreement, 'Retained Liabilities' shall mean the following Liabilities of Weyerhaeuser or any other member of the Weyerhaeuser Group." (*Id.* at Section 2.03(b)) Subsections 2.03(b)(i)-(x) explicitly state the liabilities retained by Weyerhaeuser.

Section 9.02 of the Contribution Agreement governs interpretation of the Contribution Agreement and states, "[w]henever the words 'include', 'includes' or 'including' are used in this Agreement, they shall be deemed to be followed by the words 'without limitation'." (*Id.* at Section 9.02) Based on the parties' stipulation, "shall include," as used in Section 2.03(a), must be interpreted to mean "shall include without limitation" the Newco Liabilities specified in Subsections 2.03(a)(i)-(xi). (*Id.* at Section 2.03(a))

Under Delaware law, contract language such as "including without limitation" and "including but not limited to" is interpreted broadly. *See CorVel Enter. Comp, Inc. v. Schaffer*, Civ. No. 4896, 2010 WL 2091212 at *2 (Del. Ch. May 19, 2010) (giving the language "including but not limited to" as used in a release agreement an expansive reading). When the language "including but not limited to" is used in a contract provision and is followed by a list contained in the provision or several subsections, the

_____

[4]Under Section 2.01(b) of the Contribution Agreement, Domtar "irrevocably assume[d] and agree[d] to faithfully pay, perform and discharge when due all the Newco Liabilities . . . ." (D.I. 14, ex. A at Section 2.01(b))

6

Third Circuit has interpreted such language to mean that the following list is "not exhaustive." *Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 280 (3d Cir. 1995); *see also McKissick v. Yuen*, 618 F.3d 1177, 1185 (10th Cir. 2010) (holding that a phrase appearing within an "including but not limited to" clause of a release agreement is intended to serve as an example, illustration, or representation of what is encompassed by the release).

Domtar argues that liability for workers compensation claims falls under Subsection 2.03(a)(vii), which states that Domtar assumes liability for "all employment and employee benefit-related Liabilities with respect to Transferred Employees and their dependents and beneficiaries . . . ." (D.I. 14, ex. A at Section 2.03(a)(vii)) Domtar avers that Weyerhaeuser retained liability for workers compensation claims of Retired Employees because Subsection 2.03(a)(vii) specifies only Transferred Employees, and no other provision within Subsections 2.03(a)(i)-(xi) explicitly addresses Retired Employees or employment liabilities. (D.I. 13 at 6) Such an interpretation of the Contribution Agreement would violate the "well-established principle that in construing a contract a court cannot in effect rewrite it" because it would effectively read the "shall include without limitation" clause out of the contract. *Gertrude L.Q. v. Stephen P.Q.*, 466 A.2d 1213, 1217 (Del. 1983) (citation omitted). Weyerhaeuser and Domtar are sophisticated parties that explicitly stipulated how the word "include" shall be interpreted. In construing the Contribution Agreement, the court will "give words in the contract their plain, ordinary meaning." *Id.*

7

Section 2.03(a) broadly transfers all liabilities to Domtar except those explicitly retained by Weyerhaeuser in Section 2.03(b). Subsections 2.03(a)(i)-(xi) are merely illustrative and do not limit the Newco Liabilities beyond what is expressly retained by Weyerhaeuser in Subsections 2.03(b)(i)-(x). Liability for workers compensation claims of Retired Workers is not expressly addressed by Subsections 2.03(b)(i)-(x). Therefore, liability for workers compensation claims of Retired Workers falls within the Newco Liabilities assumed by Domtar, and Weyerhaeuser has demonstrated a breach of an obligation imposed by contract.[5]

## B. Statute of Limitations

Domtar avers that, even if Weyerhaeuser's claim regarding liability for worker compensation claims of Retired Employees survives the motion to dismiss, certain claims are barred by Delaware's statute of limitations. (D.I. 13 at 9) Under Delaware law, there is a three-year statute of limitations for breach of contract claims (10 Del. C. § 8106(a)) which "begins to run when the contract is breached." *In re Marvel Entm't Grp., Inc.*, Civ. Nos. 97-638, 98-756, 273 B.R. 58, 80 (D. Del. 2002). In the complaint, Weyerhaeuser alleges that since the date of the Sale on March 7, 2007, it has tendered to Domtar dozens of workers compensation claims relating to Retired Employees, all of which Domtar has either expressly or impliedly rejected. (D.I. 1 at ¶¶ 38-39)

---

[5]Section 6.09(a)(iii) of the Transaction Agreement is consistent with this conclusion because it does not address liability for workers compensation claims of Retired Employees and only stipulates that Weyerhaeuser retains liability for workers compensation claims of U.S. WC Newco Employees. (D.I. 14, ex. B at Section 6.09(a)(iii))

8

38

Weyerhaeuser filed the complaint on January 13, 2014. Thus, all claims that accrued before January 13, 2011, three years prior to the filing of the complaint, are time-barred unless a tolling doctrine applies.

"Under Delaware law, the statute of limitations is properly tolled under the doctrines of 'inherently unknowable' and 'fraudulent concealment'." *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F. Supp. 247, 252 (D. Del. 1990). "Under the 'inherently unknowable injury' doctrine . . . the statute of limitations is tolled 'where it would be practically impossible for a plaintiff to discover the existence of a cause of action' and 'the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'" *E.I. duPont de Nemours & Co. v. Medtronic Vascular, Inc.*, Civ. No. N10C-09-058, 2013 WL 261415 at *11 (Del. Super. Jan. 18, 2013), as corrected (Jan. 29, 2013) (quoting *Cent. Mortgage Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, Civ. No. 5140, 2012 WL 3201139 at *22 (Del. Ch. Aug. 7, 2012) (citations omitted)). "Fraudulent concealment requires an affirmative act of concealment [of the facts necessary to put a plaintiff on notice of the truth] or some misrepresentation by a defendant that prevents a plaintiff from gaining knowledge of the facts." *Id.* (citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, Civ. Nos. 762, 763, 2005 WL 5750601 at *19 (Del. Ch. June 29, 2005).

"The statute of limitations can only be tolled until a plaintiff discovers, or by exercising reasonable diligence should have discovered, facts constituting the basis of the cause of action . . . , [and] [t]he doctrines of inherently unknowable injury, and

9

fraudulent concealment, do not apply when the plaintiff has actual knowledge of the breach and potential injuries to follow." *Id.* at 11-12. Additionally, parties engaging in settlement negotiations to avoid a suit "is not a proper ground for tolling the statute of limitations" as it "would obviously undermine the public policy behind the statute of limitations." *VLIW Tech.*, 2005 WL 1089027 at *13.

The doctrines of inherently unknowable injury and fraudulent concealment do not apply to the case at bar because Weyerhaeuser had actual knowledge of the alleged breach and the injuries to follow. Indeed, not only did Weyerhaeuser tender to Domtar many workers compensation claims relating to Retired Employees since the date of the Sale, but Weyerhaeuser administered, paid, and resolved the Retired Employee workers compensation claims at its own expense as a result of Domtar rejecting tender of the claims. (D.I. 1 at ¶¶ 38-41) In two previous settlement agreements, one on December 21, 2009 and the other on February 28, 2013, Weyerhaeuser and Domtar stipulated that each of the parties reserves all rights with respect to the workers compensation dispute.[6] (*Id.* at ¶¶ 43-44) Such stipulations confirm that the instant dispute is one in which the parties have been engaged since at least 2009. Moreover,

---

[6]The December 21, 2009 settlement agreement between Weyerhaeuser and Domtar states, "Each of the [p]arties reserves all rights, and grants no releases, with respect to any matter other than the Post-Closing Resolved Items as set forth herein." (D.I. 1 at ¶ 43) The February 28, 2013 settlement agreement between the parties states, "The [p]arties intend to address issues relating to these Non-Addressed Workers Comp Claims at a later date after the [p]arties have finalized the population of claims to be included in a settlement. Pending the later addressing of those issues, the [p]arties reserve all rights with respect to the Non-Addressed Workers Comp Claims." (*Id.* at ¶ 44)

10

even if Weyerhaeuser intended to toll the statute of limitations, engaging in settlement negotiations is not a proper ground for doing so.[7] *See VLIW Tech.*, 2005 WL 1089027 at *13. Therefore, all claims regarding liability for workers compensation claims of Retired Employees that accrued prior to January 13, 2011 are time-barred.

## C. Liability for Administration Costs of Workers Compensation Claims for Transferred Employees

Additionally, Weyerhaeuser alleges that Domtar has not taken responsibility for the administration of workers compensation claims made by Transferred Employees. (D.I. 1 at ¶ 50) Domtar argues that Weyerhaesuer's allegation regarding Domtar's purported failure to administer workers compensation claims of Transferred Employees should be dismissed for failure to state a claim. (D.I. 13 at 9) In determining whether Weyerhaeuser pled facts sufficient to survive a motion to dismiss for failure to state a breach of contract claim, the above-cited standard applies. Weyerhaeuser must therefore demonstrate: "[F]irst, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech.*, 840 A.2d at 612.

First, the existence of a valid contract is undisputed. (*See* D.I. 13 at 2; D.I. 14, exs. A-B) Domtar "irrevocably assume[d] and agree[d] to faithfully pay, perform and discharge when due all the Newco Liabilities" including "all employment and employee

---

[7]Additionally, a settlement agreement executed on February 28, 2013 could not have tolled workers compensation claims that had already accrued at least two years earlier by January 13, 2011.

11

41

benefit-related Liabilities with respect to Transferred Employees . . . ." (D.I. 14, ex. A at Section 2.01(b); *Id.* at Section 2.03(a)(vii))  Administration of workers compensation claims of Transferred Employees falls within the scope of employment-related Liabilities. (*See* D.I. 14, ex. B at Section 4.12(c))  Second, Weyerhaeuser sufficiently pled the breach of an obligation imposed by the contract by alleging that Domtar has refused to take responsibility for the administration of workers compensation claims made by Transferred Employees.  (D.I. 1 at ¶ 58)  Finally, Weyerhaeuser sufficiently pled damages by alleging that it has incurred significant expenses in administering workers compensation claims made by Transferred Employees, and that Domtar has refused to reimburse Weyerhaeuser for these incurred expenses.  (*Id.* at ¶¶ 56-57)

Domtar asserts that the claim should be dismissed because Weyerhaeuser did not "allege any demand by Weyerhaeuser that Domtar make any payment or the existence of any purportedly unpaid invoices or amounts."  (D.I. 13 at 9-10)  However, Delaware law does not require Weyerhaeuser to demonstrate that a demand was made and refused in order to survive a motion to dismiss a breach of contract claim.  *See VLIW Tech.*, 840 A.2d at 612; *Winston v. Mandor*, 710 A.2d 835, 840 (Del. Ch. 1997). Moreover, Weyerhaeuser need not allege an exact monetary figure in order to sufficiently plead that it suffered damages from the breach of contract.  *See VLIW Tech.*, 840 A.2d at 613 (finding that VLIW's complaint sufficiently pled damages resulting from a breach of contract by alleging that "as the successor to the Multiflow

12

rights in question, [VLIW] ha[d] been damaged by H-P's breach of the 1990

Agreement").

## V. CONCLUSION

For the reasons discussed above, Domtar's motion to dismiss (D.I. 12) is granted

to the extent that Weyerhaeuser's claims regarding liability for workers compensation

claims of Retired Employees that accrued prior to January 13, 2011 are barred by the

statute of limitations.  Otherwise, the motion is denied.  An appropriate order shall issue.

13