No. 16-4159

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## WEYERHAEUSER COMPANY

### Plaintiff-Appellant,

### vs.

## DOMTAR CORP. and DOMTAR PAPER COMPANY, LLC,

### Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

District Court Case No. 1:14-cv-00024-SLR

The Honorable Sue L. Robinson, District Judge

## APPELLEES' ANSWERING BRIEF

RICHARDS, LAYTON & FINGER, P.A.
Chad M. Shandler
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700

DEBEVOISE & PLIMPTON LLP
Gary W. Kubek
Courtney M. Dankworth
Alex Ginsberg
919 Third Avenue
New York, NY 10022
(212) 909-6000

Counsel for Defendants-Appellees

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Domtar Corporation is the parent corporation of Domtar Paper Company, LLC.  No publicly held company holds 10 percent or more of the stock of Domtar Corporation or Domtar Paper Company, LLC.  No publicly held corporation not a party to the proceeding before this Court has a financial interest in the outcome of the proceeding.

# **TABLE OF CONTENTS**

I.      STATEMENT OF ISSUES ............................................................................1

II.     STATEMENT OF RELATED PROCEEDINGS .................................................2

III.    STANDARD OF REVIEW ..........................................................................3

IV.     STATEMENT OF THE CASE.......................................................................4

      A.      STATEMENT OF FACTS ................................................................4

      B.      PRIOR PROCEEDINGS ................................................................11

V.      SUMMARY OF ARGUMENT ....................................................................12

VI.     ARGUMENT ..........................................................................................14

      A.      Weyerhaeuser Waived Its Right To Hold Domtar Liable for Retired
           Employee Claims ............................................................................14

      B.      Section 9.10 of the Contribution Agreement Does Not Bar a Finding of
           Waiver ............................................................................................22

      C.      Weyerhaeuser Acquiesced to Being Responsible for Retired Employee
           Claims ............................................................................................28

      D.      Weyerhaeuser's Attempted Retraction Was Ineffective.......................31

      E.      The Statute of Limitations Barred Claims That Accrued Before January
           13, 2011 Because the Parties Did Not Agree To Toll the Statute of
           Limitations ......................................................................................35

CONCLUSION............................................................................................38

# TABLE OF AUTHORITIES

## CASES

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*,
  27 A.3d 522, 530 (Del. 2011) ....................................................................32, 33

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................3

*Cantor Fitzgerald, L.P. v. Cantor*,
  724 A.2d 571 (Del. Ch. 1998) ...............................................................28, 29, 30

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................3

*Fair Hous. Rights Ctr. in Se. Pa. v. Post Goldtex GP, LLC*,
  823 F.3d 209 (3d Cir. 2016) ...............................................................................3

*Getty Terminals Corp. v. Coastal Oil New England, Inc.*,
  995 F.2d 372 (2d Cir. 1993) ..............................................................................33

*Harleysville Ins. Co. v. Church Ins. Co.*,
  892 A.2d 356 (Del. 2005) ..................................................................................31

*Harney v. Walden*, No. 10-200-JBC, 2012 WL 4329281
  (E.D. Ky. Sept. 19, 2012) ..................................................................................22

*In re Givans Estate*, No. RW-74,
  1993 WL 50316 (Del. Ch. Feb. 1, 1993) ..........................................................31

*Julian v. E. States Constr. Serv., Inc.*,
  No. 1892-VCP, 2009 WL 1211642 (Del. Ch. May 5, 2009) .............................15

*Julian v. E. States Constr. Serv., Inc.*,
  No. 1892-VCP, 2008 WL 2673300 (Del. Ch. July 8, 2008) .............................20

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ........................................25

*Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014)..................29, 34

*M-S.A. v. E-R.*,
  No. CN11-04380, 2013 WL 8290635 (Del. Fam. Ct. June 6, 2013) .................22

*McElroy v. B.F. Goodrich Co.*, 73 F.3d 722 (7th Cir. 1996)...................................16

*Moore v. Travelers Indem. Ins. Co.*,
    408 A.2d 298 (Del. Super. Ct. 1979)..................................................................19

*NTC Grp., Inc. v. W. Point-Pepperell, Inc.*, No. 10665,
    1990 WL 143842 (Del. Ch. Sept. 26, 1990)................................................28, 29

*Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*,
    297 A.2d 28 (Del. 1972) ...............................................................30, 31, 34, 35

*Prizm Grp., Inc. v. Anderson, C.A.*,
    No. 4060-VCP, 2010 WL 1850792 (Del. Ch. May 10, 2010) ....................15, 16

*Ross v. Gihuly*, 755 F.3d 185 (3d Cir. 2014) ..........................................................3

*Textron, Inc. v. Acument Global Techs. ("Textron I")*,
    C.A. No. 10C-07-103 JRJ.......................................................................21

*Textron, Inc. v. Acument Global Techs. ("Textron II")*,
    C.A. No. 10C-07-103 JRJ.......................................................................21

*U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993)................................................................................25, 26

*Vila v. BVWebTies LLC*,
    No. CIV. A. 4308-VCS, 2010 WL 3866098 (Del. Ch. Oct. 1, 2010) ..........15, 16

*VLIW Technology, LLC v. Hewlett-Packard Co.*,
    No. 20069, 2005 WL 1089027 (Del. Ch. May 4, 2005)....................................36

## STATUTES

10 Del. C. § 8106(a)..........................................................................................2, 35

## I.    STATEMENT OF ISSUES

1.    Whether Plaintiff-Appellant Weyerhaeuser Company ("Weyerhaeuser") waived and/or acquiesced to giving up its contractual rights to hold Defendants-Appellees Domtar Corporation and Domtar Paper Company, LLC (together, "Domtar") responsible for the payment of certain workers compensation claims.

The District Court correctly held that Weyerhaeuser waived its contractual rights and acquiesced to Domtar's position with respect to liability for the workers compensation claims at issue, both through a letter signed by its authorized representative and by its course of conduct for more than three years from the fall of 2008 until at least January 2012.  The court correctly rejected Weyerhaeuser's argument that its waiver and acquiescence were excused by its mistaken interpretation of the contractual provisions.  (*See* App. 18-27 (Memorandum Opinion, dated August 31, 2016, granting Domtar's Motion for Summary Judgment and denying Weyerhaeuser's Motion for Summary Judgment).)

2.    Whether a provision of the parties' Agreements governing the responsibility for workers compensation claims, which required a signed writing to waive or modify any contract term, was itself waived by Weyerhaeuser's oral statements and conduct.

The District Court correctly held that this provision could be and was waived by Weyerhaeuser's oral statements and conduct.   (*See* App. 15-18, 25-26.) However, it is unnecessary for this Court to determine the correctness of that ruling because Weyerhaeuser in fact waived its rights and acquiesced to Domtar's position through a signed writing.

3.      Whether Weyerhaeuser retracted its waiver and/or acquiescence.

The District Court correctly held that Weyerhaeuser did not retract its waiver or acquiescence and that acquiescence cannot be retracted under governing Delaware law.  (*See* App. 27-28.)

4.      Whether Delaware's three-year statute of limitations for breach of contract claims, 10 Del. C. § 8106(a), barred all of Weyerhaeuser's claims that accrued before January 13, 2011.

The District Court correctly held that the statute of limitations barred Weyerhaeuser's claims that accrued before January 13, 2011 because the parties did not agree to toll the statute of limitations.  (*See* App. 38-41 (Memorandum Opinion, dated July 30, 2014, granting in part and denying in part Domtar's Motion to Dismiss).)

## II.    STATEMENT OF RELATED PROCEEDINGS

This case has not previously been before this Court.  A case that may be considered related is pending in the United States District Court for the District of

Delaware, Case No. 17-00177-GMS.   That case was filed by Weyerhaeuser in

February 2017 alleging breach of contract and seeking declaratory judgment

regarding responsibility for certain asbestos-related actions filed against

Weyerhaeuser by former employees and other individuals.   The claims at issue in

that action were not filed as workers compensation claims, the subject of this

action.   Accordingly, resolution of that case is not necessary before resolving the

instant appeal.

## III.   STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*.  *Ross v. Gihuly*,

755 F.3d 185, 190 n.9 (3d Cir. 2014).   Summary judgment is appropriate when the

court concludes that there is no genuine dispute as to any material fact and that the

moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 330 (1986).   Such dispute exists only where "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The District Court's partial grant of Domtar's motion to dismiss to the extent

it was based on the statute of limitations is also subject to *de novo* review.  *Fair*

*Hous. Rights Ctr. in Se. Pa. v. Post Goldtex GP, LLC*, 823 F.3d 209, 213 (3d Cir.

2016) (affirming dismissal).

## IV.    STATEMENT OF THE CASE

### A.    STATEMENT OF FACTS

#### 1.    The Fine Paper Transaction

On March 7, 2007, Weyerhaeuser transferred its Fine Paper Business to Domtar in a series of transactions (the "Sale") governed, in all relevant respects, by an Amended and Restated Contribution Agreement (the "Contribution Agreement") and an Amended and Restated Transaction Agreement (the "Transaction Agreement," and together with the Contribution Agreement, the "Agreements"), both dated as of January 25, 2007.  Delaware law governs both Agreements.  (App. 371, 476.)

The Agreements assigned to Domtar all post-Sale workers compensation claims for employees of the Fine Paper Business who continued to work for Domtar after the Sale ("Transferred Employees").[1]  The Agreements did not expressly address liability for workers compensation claims by former employees who had retired or otherwise left employment with the Fine Paper Business before the Sale and thus never worked for Domtar (referred to in the District Court's

---

[1] Domtar also assumed responsibility for workers compensation payments to a small number of employees who were not actively working, but were receiving workers compensation payments at the time of the Sale, only if and when they returned to work for Domtar following the Sale and thus became Transferred Employees.  There is no dispute concerning these claims.  (App. 439-40, Section 6.09(a)(iii) of the Transaction Agreement.)

4

opinion and herein as "Retired Employees," although they include former

employees who had left Weyerhaeuser for reasons other than retirement).

### 2.    The Parties' Initial Dispute

Almost immediately after the Sale, the parties disagreed about the allocation

of workers compensation liabilities for the Retired Employees.  On April 17, 2007,

Weyerhaeuser informed Domtar that it was asserting a $13.6 million liability,

which included present and future workers compensation claims of both

Transferred Employees and Retired Employees, as part of the proposed post-

closing working capital adjustment.  (App. 50.)  Domtar objected that it never

assumed that entire liability.  (App. 49-50.)  Gilles Pharand, then Domtar's Senior

Vice President, Law and Corporate Affairs, memorialized that objection in a letter,

dated June 6, 2007, to Weyerhaeuser's General Counsel, Sandy McDade.  (App.

69-70.)  McDade replied on July 23, 2007, setting forth Weyerhaeuser's position

that Domtar was liable for all workers compensation claims, except for the small

group of employees who were receiving workers compensation at the time of the

Sale and did not return to work for Domtar.  (App. 92.)

Beginning in or about August 2007, Weyerhaeuser began to invoice Domtar

for workers compensation claims, including those of Retired Employees.  (*See,*

*e.g.*, App. 528, 531-32.)  Domtar, consistent with its position, refused to pay these

invoices and told Weyerhaeuser that Domtar was responsible only for claims by

Transferred Employees.  (App. 528.)  Weyerhaeuser acknowledged in October

2007 that "Domtar and WY do not agree on the treatment of certain US workers

compensation liabilities" and that "the issue remains to be resolved."  (App. 534.)

### 3.    The Montreal Meeting and Weyerhaeuser's Agreement to Domtar's Position

During 2008, the parties exchanged correspondence concerning various

post-closing disputes, including responsibility for workers compensation claims by

Retired Employees.  The issue was included in the agenda for a meeting in

Montreal on September 11, 2008, during which the parties also discussed other

outstanding post-closing issues.  (App. 586.)

The testimony of all five witnesses who attended the Montreal meeting is

consistent with the only set of contemporaneous notes, prepared by Domtar's Vice

President, Financial Reporting and Compliance, Michael Cross, which state that

after a discussion, Weyerhaeuser's representatives agreed with Domtar's position

regarding workers compensation liabilities, but said they needed to discuss the

issue further internally. (App. 590-91; Trial D.I. 56 at 5-6.)  Anne Giardini, then

the Vice President and General Counsel (later the President) of Weyerhaeuser's

Canadian subsidiary, who had responsibility for various post-closing matters (App.

541-42, pp. 20:23-21:21), recalled having found Zygmunt Jablonski's views "persuasive." (App. 122, p. 67:8-14.)[2]

Beginning shortly after the Montreal meeting, and continuing for more than three years, Weyerhaeuser demonstrated by its communications and conduct—both with Domtar and internally—that it had consciously and thoughtfully ceded its position regarding the allocation of workers compensation liabilities and accepted Domtar's interpretation of the Agreements.

First, on October 20, 2008, Weyerhaeuser formally adjusted its own corporate accounting records to reflect the reversal of approximately $9.2 million in workers compensation liability claimed from Domtar, because "a significant number of claims will remain with Weyerhaeuser." (App. 770-71.)

Weyerhaeuser then communicated its acceptance of Domtar's view to Domtar in a series of writings. On October 28, 2008, Patrick Lane, Weyerhaeuser's transition manager for the Sale, emailed Cross acknowledging that "our invoices were not consistent with the definition of 'transferred employee' we talked about in Montreal." (App. 659.) Shortly thereafter, Lane instructed Kim Eckroth, Weyerhaeuser's Benefits Manager, to inform Domtar that revised invoices would be issued, explaining:

---

[2]    Jablonski was then Domtar's Vice President, Legal Services, and became Senior Vice President and General Counsel in early 2009. (App. 632, p. 15:5-11.)

> [M]y understanding is that our previous invoices were
> based on our understanding that all workers
> compensation liability transferred to Domtar – whereas
> our September discussions with Domtar clarified that the
> workers compensation liability went to Domtar ONLY
> for employees that showed up to work at Domtar . . . .

(App. 662 (emphasis in original).)

Weyerhaeuser thereafter created and submitted to Domtar revised invoices for post-Sale workers compensation claims that included *only* claims for Transferred Employees and did not include claims for Retired Employees. (*See* App. 55-57, pp. 50:11-52:12 (Lane deposition); App. 679-86, pp. 68:11-75:8 (Deposition of Chee-Tuck Wong, Weyerhaeuser's Benefits Accounting Manager); App. 693-764 (list of claims).) Domtar paid these revised amounts, which Weyerhaeuser acknowledged represented payment of all outstanding amounts due. (App. 766.)

In a November 26, 2008 letter to Domtar, Giardini confirmed Lane's statement that prior invoices had improperly included claims by Retired Employees. (App. 191.) She then stated unequivocally, "In fact, *we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar.*" (*Id.* (emphasis added).)

For more than three years thereafter, Weyerhaeuser invoiced Domtar only for claims filed by Transferred Employees, and Domtar paid those invoices. (*See, e.g.*, App. 609-10, pp. 66:23-67:3 (Lane deposition); App. 613-14, pp. 188:22-

8

189:5 (Lane deposition); App. 777 (internal Weyerhaeuser communication stating "it looks like Domtar is current with their invoice payments" as of October 10, 2012).) Although the parties continued to discuss *administration* of workers compensation claims by the *Transferred* Employees (which Weyerhaeuser had previously self-insured and Domtar could not directly assume because of regulatory issues in certain states), Weyerhaeuser did not contend that Domtar was responsible for claims by the Retired Employees. (*See, e.g.*, App. 779.) Giardini's list of "issues for resolution" at a proposed meeting (eventually held in December 2009) expressly stated, under the heading "U.S. Employees on Workers Compensation," that "[a]t issue is Weyerhaeuser's *management* of [workers compensation] files," but "all past workers compensation invoices have been reconciled," *i.e.*, there was no issue of responsibility for payments. (App. 784 (emphasis added).)

### 4.    Weyerhaeuser Belatedly Reverses Its Position

On January 31, 2012, Weyerhaeuser tendered a workers compensation claim by a Retired Employee to Domtar and asserted, for the first time since the September 2008 meeting, that Domtar was responsible for the Retired Employee's claim. (App. 275-76 (emails between Conrad Smucker, a Weyerhaeuser attorney, and Ania Brzezinski, Domtar's Senior Director, Legal Services).) Weyerhaeuser thereafter tendered a number of similar claims. (*E.g.*, App. 789-97.) Domtar

rejected the tendered claims and reiterated that it was responsible only for claims made by Transferred Employees, consistent with Giardini's agreement and the parties' understanding for more than three years that Domtar was *not* responsible for workers compensation claims by Retired Employees. (*See, e.g.*, App. 279-80.)

Smucker did not assert that Weyerhaeuser had previously made a mistake, nor did he contend that Domtar was responsible for amounts paid for claims filed by other Retired Employees prior to these new claims. (App. 275-76.) Indeed, Weyerhaeuser did not offer any reason for its changed position or even acknowledge that its position had changed. Weyerhaeuser never asserted that Giardini's letter, its internal accounting change to reflect that claims by Retired Employees were Weyerhaeuser's responsibility or its payment of those claims for all periods through 2011 was a "mistake" until it raised that argument during this litigation.

On July 8, 2013, Weyerhaeuser wrote to Domtar stating its intent to litigate, claiming for the first time that Domtar owed Weyerhaeuser more than $8 million for Retired Employees' claims that Weyerhaeuser had paid before December 31, 2012, and asserting that actuarial projections of future claims totaled approximately $6 million. (App. 804.) Domtar rejected Weyerhaeuser's demand. (App. 825-88.)

10

## B.    PRIOR PROCEEDINGS

On January 13, 2014, Weyerhaeuser filed the Complaint, seeking to hold

Domtar responsible for all incurred and future (post-December 2012) claims by

Retired Employees.  (Trial D.I. No. 1.)  Domtar moved to dismiss on multiple

grounds. (Trial D.I. No. 13.)  On June 30, 2014, the District Court denied the

motion in part, holding that under Section 2.03(a) of the Contribution Agreement,

Domtar was responsible for all workers compensation claims except those filed by

the small number of employees whose claims were retained by Weyerhaeuser

under Section 6.09 of the Transaction Agreement.  (App. 34-38.)  Domtar is not

appealing that ruling.  However, the court also granted Domtar's motion in part by

ruling that the statute of limitations barred Weyerhaeuser from recovering damages

for claims that accrued more than three years before the Complaint was filed.

(App. 41.)

Domtar filed an answer on August 13, 2014, asserting an affirmative defense

that Weyerhaeuser had released and waived its right to hold Domtar responsible

for workers compensation claims by Retired Employees through its course of

conduct and communications, including but not limited to Giardini's November

26, 2008 letter.  (Trial D.I. No. 20.)  Following discovery and cross-motions for

summary judgment, the District Court ruled on August 31, 2016 that Weyerhaeuser

had waived its contractual rights and acquiesced to Domtar's interpretation of the Agreements (App. 5-29), and entered judgment for Domtar (App. 3).

## V.     SUMMARY OF ARGUMENT

The District Court carefully applied Delaware law to the undisputed facts and ruled correctly that Weyerhaeuser's written agreement with Domtar's interpretation of the Agreements, and Weyerhaeuser's conduct in accordance with that interpretation for more than three years, constituted waiver of Weyerhaeuser's previously asserted rights and acquiescence to Domtar's position with respect to liability for workers compensation claims by Retired Employees. Weyerhaeuser does not argue that the District Court overlooked any disputed material facts but asserts that the court erred in its determination of every contested legal issue. None of Weyerhaeuser's arguments has merit.

Weyerhaeuser fails to support – legally or factually – its argument that the intentional and voluntary relinquishment of its previously asserted right was not a waiver because it was a "mistake." Weyerhaeuser knew all material facts relating to its contractual right to impose liability for Retired Employees' workers compensation claims on Domtar, having set forth its argument in correspondence between the parties. But following the parties' September 2008 meeting, Weyerhaeuser made a conscious decision, reflected not merely in Anne Giardini's November 26, 2008 letter but also in a formal accounting change made one month

12

earlier, to give up its position and to accept the liability. As Giardini wrote, "we are all agreed" that Domtar is responsible only for claims by persons who became its employees. (App. 191.) Weyerhaeuser thereafter acted in accordance with that agreement, re-invoicing Domtar to exclude claims by Retired Employees and charging Domtar only for claims by Transferred Employees, not just for "a temporary period of time" (as Weyerhaeuser calls it, in Appellants' Opening Brief ("WY. Br.") 1), but for more than three years. The undisputed facts show that Weyerhaeuser's waiver was not merely a "mistake" by Giardini, who in any event was Weyerhaeuser's lead negotiator and a lawyer, but a considered decision in which numerous legal, financial and human resources personnel participated.

Weyerhaeuser's argument that it retracted its waiver and acquiescence, more than three years later, is also unavailing. Weyerhaeuser did not have any right to retract its agreement, whether framed as a waiver or acquiescence, especially after the parties had negotiated and resolved numerous other disputed issues while Domtar operated with the knowledge that Weyerhaeuser had accepted responsibility for the substantial workers compensation liability.

Weyerhaeuser's arguments, if accepted, would make every negotiated resolution of a contractual dispute subject to being unwound if a party later decided that it had been mistaken about the strength of its position. That is not, and should not be, the law.

13

## VI.    ARGUMENT

### A.    Weyerhaeuser Waived Its Right To Hold Domtar Liable for Retired Employee Claims.

The District Court, after carefully reviewing and summarizing the undisputed facts, properly granted summary judgment dismissing Weyerhaeuser's claims because Weyerhaeuser, through a "continuous, conscious and voluntary course of action" "[o]ver the course of several years" (App. 25), including a signed writing by its authorized representative (App. 191), waived its contractual right to hold Domtar responsible for the workers compensation claims of Retired Employees.

After Weyerhaeuser initially took the position following the Sale that it was not responsible for workers compensation claims for Retired Employees, Weyerhaeuser made a considered decision in the fall of 2008, following discussions with Domtar and consideration by high-level officers, to change that position.  The decision was communicated to Weyerhaeuser billing personnel, who adjusted the invoices sent to Domtar, to Weyerhaeuser accounting personnel, who added more than $9 million in liabilities to Weyerhaeuser's balance sheet to reflect the change, and in November 2008, to Domtar in writing.

Weyerhaeuser seeks to escape the consequences of its actions by (i) arguing that the District Court improperly held that the Agreements' requirement that a waiver be in a signed writing could be – and was – itself waived by Weyerhaeuser,

14

and (ii) characterizing its own course of conduct as a "mistake."  But neither of these arguments can prevail: (i) the argument about the need for a signed writing is not only wrong, but a red herring, because Weyerhaeuser in fact waived its rights in a signed writing, Giardini's November 2008 letter, and (ii) the claim of mistake fails because the law regarding waiver does not protect a party against its own mistakes in legal analysis, negotiations or decision-making.  Not surprisingly, Weyerhaeuser has cited no authority supporting its position that a sophisticated corporate party can walk away from a negotiated resolution of a contractual dispute whenever it reconsiders its decision.

### 1.    Weyerhaeuser's Written Statements and Course of Conduct Establish Waiver.

To establish waiver, a party must show that the other party "voluntarily and intentionally relinquished a known right."  *Julian v. E. States Constr. Serv., Inc.*, No. CIV. A. 1892-VCP, 2009 WL 1211642, at *8 (Del. Ch. May 5, 2009).  Waiver requires "proof that a person (1) had knowledge of all material facts relating to his rights and (2) intended to relinquish such rights voluntarily."  *Prizm Grp., Inc. v. Anderson, C.A.*, No. 4060-VCP, 2010 WL 1850792, at *6 (Del. Ch. May 10, 2010).  "The rule that one may waive his contractual rights 'rest[s] on an idea no more complicated than that any competent adult can abandon a legal right and if he does so he has lost it forever.'"  *Vila v. BVWebTies LLC*, No. CIV. A. 4308-VCS,

2010 WL 3866098, at *10 n.72 (Del. Ch. Oct. 1, 2010) (quoting *McElroy v. B.F. Goodrich Co.*, 73 F.3d 722, 724 (7th Cir. 1996)).  The undisputed facts show that both elements of this test were satisfied.

*First*, immediately following the Sale, Weyerhaeuser "had knowledge of all material facts relating to [its] rights," *Prizm Grp.,* 2010 WL 1850792, at *6, to reimbursement of workers compensation payments to Retired Employees, the position it now characterizes as "correct."  Weyerhaeuser sought to impose liability on Domtar for all workers compensation claims through a proposed $13.6 million working capital adjustment and invoiced Domtar for all claims, including those of Retired Employees, for more than a year after the Sale.  Weyerhaeuser set forth its position clearly in at least two letters preceding the Montreal meeting.  (App. 105, 523.)  Domtar expressly disclaimed responsibility for the workers compensation claims of Retired Employees, so Weyerhaeuser was fully aware of the dispute and the parties' respective positions.  (*E.g.*, App. 519, 573-74.)

*Second*, Weyerhaeuser unambiguously gave up its rights through Giardini's November 26, 2008 letter to Domtar, confirming the position Giardini and others had articulated during the Montreal meeting.  That letter establishes that Weyerhaeuser "intended to relinquish [its] rights voluntarily," the second of the two requisite elements of waiver.  *Prizm Grp.*, 2010 WL 1850792, at *6.

16

*Third*, the clear language of Giardini's letter conveying Weyerhaeuser's intent is confirmed by the rest of the factual record, which shows a deliberate decision-making process:[3]

- Giardini testified that she discussed the issue with Weyerhaeuser's general counsel after the meeting in Montreal.  (App. 548.)

- On October 20, 2008—more than a month before formally communicating the decision to Domtar—Weyerhaeuser's chief accounting officer approved a revision of its accounting records to reflect a $9.2 million reduction in the workers compensation liability claimed from Domtar and a $3.4 million decrease in the "outstanding WC receivable balance" already billed, because "a significant number of claims will remain with Weyerhaeuser."  (App. 769-71.)

- On October 28, 2008, Weyerhaeuser's transition manager Lane told Domtar's Cross that Weyerhaeuser had accepted "the definition of 'transferred employee' we talked about in Montreal."  (App. 659.)

- A week later, Lane told Weyerhaeuser's benefits manager to communicate the change to Domtar, noting that "our previous

---

[3]    Domtar notes, as it did below, that the record of Weyerhaeuser's decision-making process is incomplete because Weyerhaeuser withheld or redacted numerous documents relevant to its decision to accept Domtar's position. However, such documents are not necessary to affirm the decision of the District Court.

17

invoices were based on our understanding that all workers

compensation liability transferred to Domtar – whereas our September

discussions with Domtar clarified that the workers compensation

liability went to Domtar ONLY for employees that showed up to work

at Domtar . . . ."  (App. 662 (emphasis in original).)

- On November 15, 2008, Weyerhaeuser sent Domtar a revised

  spreadsheet aggregating claims paid on behalf of Transferred

  Employees only, covering the period March 2007 through October

  2008.  (App. 693.)

These undisputed facts evidence a series of intentional steps over a period of

more than one month, involving senior officers in multiple Weyerhaeuser

departments, culminating in Giardini's letter, which waived Weyerhaeuser's right

to reimbursement (and, as discussed *infra*, also acquiesced to Domtar's position).

### 2.    Weyerhaeuser's Waiver Is Not Excused as a Mistake.

Weyerhaeuser argues that it did not intend to waive its rights because

Giardini "was mistaken about the rights Weyerhaeuser possessed."  WY. Br. 21.

But Weyerhaeuser's waiver was not simply the mistaken act of a single employee

(who in any event was the president and former general counsel of Weyerhaeuser's

Canadian subsidiary).  Rather, as described above, Weyerhaeuser's waiver was

decided on and implemented through continuing, conscious actions by

18

Weyerhaeuser's finance, accounting, human resources and legal departments over a period of more than three years, which were contrary to Weyerhaeuser's original, fully articulated position that these claims were Domtar's responsibility.

Weyerhaeuser cites no cases holding that an "interpretative mistake" concerning a contract provision (as Weyerhaeuser deemed this in the District Court, Trial D.I. 67 at 4) relieves a party from its voluntary and intentional abandonment of a claim.[4]  Instead, Weyerhaeuser relies principally on a single sentence in *Moore v. Travelers Indem. Ins. Co.*, 408 A.2d 298, 302 (Del. Super. Ct. 1979), which stated, "The requisite intention to establish a waiver cannot be found in mistake."  However, the "mistake" asserted in that case was not a sophisticated party's mistaken evaluation of its legal position, but rather a purported administrative mistake in paying benefits under an old, allegedly lapsed insurance policy two days after the carrier issued a new policy.[5]  Weyerhaeuser does not point to any facts as to which it had a mistaken understanding, and this case does

---

[4]  Weyerhaeuser's assertion that "both Giardini *and* Domtar were mistaken about the parties' rights under the Sale contracts when Giardini sent that letter," WY. Br. 22 (emphasis in original), is both unsupported and irrelevant.  The binding nature of a resolution of a contractual dispute does not depend on whether one or both parties were "correct" about how a court would resolve their dispute or whether the party that prevails in a negotiation "should have" won.

[5]  Weyerhaeuser's assertion that the District Court "only distinguished [*Moore*] as applying to insurance cases," WY. Br. 22, grossly mischaracterizes the court's opinion, which in fact relied on the ground described in text above.

not involve just one allegedly mistaken payment but a multi-year course of conduct consistent with the written abandonment of Weyerhaeuser's prior position.[6]

The District Court properly rejected Weyerhaeuser's claim that its purported "mistake interpreting the contract" precluded a finding of waiver (or acquiescence), relying on Delaware cases holding that "a party waived a contract right even though they were mistaken as to the operation of the contract, because they were aware of the potential for mistake." (App. 20.) For example, in *Julian v. E. States Constr. Serv., Inc.*, No. 1892-VCP, 2008 WL 2673300, at *17 (Del. Ch. July 8, 2008), the court held that because a defendant "knew it had at least an arguable basis" for insisting on a buyback of plaintiff's stock and "intentionally chose not to enforce that right," its failure to enforce that right constituted a waiver. Weyerhaeuser's attempt to distinguish *Julian* on the ground that the defendant did not subjectively believe the position advanced in the litigation, WY. Br. 25, fails because that court expressly held that the mistake argument would be unavailing even if defendant did subjectively believe its position, as it "knew that belief was subject to question." 2008 WL 2673300, at *15 n.87. Here, Weyerhaeuser knew that Domtar's position was at least "subject to question"

---

[6]  Weyerhaeuser's citation of non-Delaware cases involving mistakes of law, WY. Br. 22 n.5, is inapposite because Weyerhaeuser does not point to any mistake of law. In addition, as the District Court noted, the doctrine of mutual mistake of law applies when a party seeks to rescind a contract, not to enforce it, as here. (App. 23 n.8.)

because Weyerhaeuser had vigorously argued the opposing position for more than a year.

Weyerhaeuser's argument finds no support in *Textron, Inc. v. Acument Global Technologies, Inc.*, which it incorrectly claims "is remarkably similar to the case at hand." WY. Br. 26.[7]  The court in *Textron* held that a party's mistaken understanding of the tax consequences of its actions (whether a particular expense was deductible under U.S. law) could negate the intent required for a waiver of contractual rights.  *Textron, Inc. v. Acument Global Techs. ("Textron I")*, C.A. No. 10C-07-103 JRJ CCLD, 2011 WL 1326842, at *6 (Del. Super. Ct. Apr. 6, 2011); *see also Textron, Inc. v. Acument Global Techs. ("Textron II")*, C.A. No. 10C-07-103 JRJ CCLD, 2014 WL 2903060, at *18 (Del. Super. Ct.  Mar. 25, 2014) (similar holding after trial).  As the District Court noted, the mistaken party in *Textron* "had always acted consistent with its [incorrect] interpretation of the agreements."  (App. 23.)  As a result, the court in that case held that "Textron has not proven that Acument knew the Offset was hypothetical and, therefore, waived its right to contest the Offset's applicability."  *Textron II*, 2014 WL 2903060, at *18.  Here, by contrast, the undisputed facts show that, following the Sale,

---

[7]    Weyerhaeuser's assertion that the District Court said "the *Textron* case . . . would give it 'pause in finding waiver,'" WY. Br. 26, mischaracterizes the court's actual statement that *Textron* "demonstrates the type of 'mistake' . . . that would give the court pause in finding waiver."  (App. 22-23.)   The court then explained why this case is not like *Textron*.  (App. 23.)

Weyerhaeuser "had full knowledge of its contractual right . . . to impose liability

for Retired Employees' worker compensation claims" (App. 25), and thus had

more than an "arguable basis" for insisting on its interpretation, but acceded to

Domtar's position.

While Weyerhaeuser may have come to regret its waiver of its rights with

respect to the Retired Employees, the record contains no evidence of the type of

mistake that might negate that waiver.  *See M-S.A. v. E-R.*, No. CN11-04380, 2013

WL 8290635, at *3 (Del. Fam. Ct. June 6, 2013) ("While [Plaintiff] regrets signing

the Agreement, there was no evidence to suggest [Plaintiff] made a mistake when

the parties' agreement was made final."); *Harney v. Walden*, No. 10-200-JBC,

2012 WL 4329281, at *1 (E.D. Ky. Sept. 19, 2012) ("Regrets that things did not

work out the way one had planned, however, do not make the decision to enter into

a settlement agreement a 'mistake.'").

### B.    Section 9.10 of the Contribution Agreement Does Not Bar a Finding of Waiver.

Weyerhaeuser devotes considerable attention to arguing that Section 9.10 of

the Contribution Agreement precluded any oral modification of the Agreements.

WY. Br. 18-21.  This argument is unavailing because, *first*, the Giardini letter

satisfied the requirement for a signed writing, and *second*, even if it did not,

Section 9.10 itself could be, and was, orally modified.

### 1.    The Written Waiver Requirement of Section 9.10 of the Contribution Agreement Was Satisfied.

Weyerhaeuser's argument that it did not waive the requirement of Section 9.10 that a waiver be "in writing and signed" by the waiving party is beside the point because the undisputed facts establish, and the District Court's opinion confirms, that Giardini's November 26, 2008 letter satisfied that requirement.  The letter clearly stated Weyerhaeuser's agreement with Domtar: "In fact, we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar."  (App. 191.) Weyerhaeuser does not dispute that Giardini was authorized to act on its behalf in this context.

Weyerhaeuser argues that the letter cannot serve as a written waiver because Giardini did not subjectively intend it to have that effect.  WY. Br. 23.  This contention relies solely on Giardini's self-serving explanation that she applied the "Without Prejudice" disclaimer to the November 26, 2008 letter because she did not intend for Domtar to rely on her affirmative statement that "we are all agreed" that Domtar was liable only for workers compensation claims by employees who went to work for Domtar.  *Id.*  But this post-hoc rationalization is at odds with the facts and the law, both of which Weyerhaeuser ignores.

The undisputed facts demonstrate a collective, final decision by Weyerhaeuser on the workers compensation issue, which involved senior officers

23

in Weyerhaeuser's legal, accounting, finance and human resources departments.

*See* IV.A.3, *supra*.  Moreover, Weyerhaeuser's argument that Giardini did not

intend Domtar to rely on the letter is inconsistent with Weyerhaeuser's

acknowledgement in this Court that "Giardini was persuaded by Domtar's

argument," WY. Br. 10, and Giardini's sworn testimony that "[t]he conclusion that

workers' compensation liability went to Domtar only for employees that showed

up to work at Domtar is mistaken advice from me."  (App. 128.)  The record

contains no factual support for the contention that Giardini intended to prevent

Domtar from relying on her statement of Weyerhaeuser's position, which

Weyerhaeuser then abided by for more than three years.

 With respect to the applicable law, the District Court cogently summarized

the Canadian authority demonstrating that use of the "Without Prejudice"

disclaimer by Canadian lawyers (such as Giardini) must be evaluated in light of the

purpose and context of a communication.  (App. 23-25.)  The Canadian case law

and an article submitted by Domtar (App. 835-910) and cited by the court establish

that this boilerplate language cannot negate an express statement of

Weyerhaeuser's agreement with Domtar.  (App. 24.)[8]  Giardini's letter summarized

the negotiating posture of eleven post-Sale issues, including workers compensation

---

[8]    As the District Court noted, Weyerhaeuser did not cite any authority supporting
       its position in that court (App. 25), just as it has not in this Court.

liability.  (App. 189-92.)  The District Court correctly held that while the letter

"sets forth several positions with respect to then-unresolved issues that could

properly be subject to a 'without prejudice' disclaimer . . . the statements with

respect to workers compensation liabilities were not a mere negotiation proposal.

Instead, Giardini was confirming that all the proper authorities within

Weyerhaeuser had signed-off on her preliminary agreement in Montreal to

Domtar's position."  (App. 24.)  Thus, the letter was binding on Weyerhaeuser.

### 2. The District Court Correctly Found That Section 9.10 Could Be and Was Orally Modified.

Even if Giardini's letter had not been a binding waiver, the District Court

correctly determined that Section 9.10's requirement of a written waiver was

modified by Weyerhaeuser's statements and conduct.  (App. 17-18.)  Although

Weyerhaeuser complains repeatedly that the District Court made this determination

*sua sponte*, Weyerhaeuser cites no authority for its assertion that the District Court

"impermissibly" found an oral waiver of Section 9.10.  WY. Br. 24.  As the

Supreme Court held in *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991),

"When an issue or claim is properly before the court, the court is not limited to the

particular legal theories advanced by the parties, but rather retains the independent

power to identify and apply the proper construction of governing law."  *See also*

*U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447

(1993) ("[A] court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." (citation omitted)).

Presented with the issue of whether Weyerhaeuser waived its contractual rights, the District Court was free to identify and apply the relevant law. Moreover, Weyerhaeuser itself raised the applicability of Section 9.10 in its opposition to Domtar's summary judgment motion when it argued that "Weyerhaeuser's conduct cannot effect a waiver" because "'[a] waiver could only be effective if made in writing.'"  (Trial D.I. 67 at 3 (citation omitted).)

With respect to the substance of Weyerhaeuser's argument, its assertion that "[t]here can be no doubt the parties intended the writing requirement to remain in effect because both parties argued only about whether it had been *satisfied*," WY. Br. 20 (emphasis in original), is both logically and factually wrong.  Domtar's argument, during summary judgment briefing in 2015, that Giardini's letter satisfied the writing requirement did not concede that the provision had not been waived by Weyerhaeuser's conduct and is not probative of what either party believed from 2008 to 2012 about whether the Agreements *could* be modified without a writing.  In any event, Domtar also argued below that Weyerhaeuser's oral statements and other conduct established a waiver.  (Trial D.I. 56 at 10-16 ("The course of conduct between the parties – the material facts of which are

26

undisputed – demonstrates that Weyerhaeuser knowingly waived any right to

reimbursement from Domtar for workers compensation claims pertaining to

[Retired] Employees.").)

In addition, there is no basis for Weyerhaeuser's assertion that the parties

had a "longstanding practice of executing formal agreements when supplementing

or modifying the Sale contracts." WY. Br. 20. Weyerhaeuser offers no record

citation for this argument, and the related discussion of this purported "course of

dealing" in its Statement of Facts cites only a letter that merely set out open issues

before the September 2008 meeting and deposition testimony regarding use of the

"Without Prejudice" designation, discussed above. WY. Br. 12, 20. Because the

only "formal agreements" resolving post-Sale disputes referenced in

Weyerhaeuser's brief were signed in December 2009 and February 2013, WY. Br.

12-14, they cannot demonstrate a "longstanding practice" at the time of Giardini's

November 2008 letter. Moreover, as the District Court noted, Giardini's June 2009

list of "issues for resolution" at the meeting that resulted in the December 2009

agreement expressly stated that "'all past workers compensation invoices have

been reconciled'" (App. 11, quoting App.78), so only *administration* of the

workers compensation files remained at issue." (App. 11 (emphasis added).)[9] In

---

[9]    While the February 2013 agreement noted the existence of a dispute about the
    workers compensation issue, that reflected the fact that Weyerhaeuser had

fact, the parties had resolved a number of issues in the two years following the Sale, and the record contains no evidence of a practice of formally documenting each of those issues.

The District Court therefore correctly concluded that Weyerhaeuser had waived Section 9.10's writing requirement and also waived its substantive rights by "engag[ing] in a continuous, conscious and voluntary course of action consistent with Domtar's interpretation of Section 2.03(a) and inconsistent with its own rights."  (App. 25.)

### C. Weyerhaeuser Acquiesced to Being Responsible for Retired Employee Claims.

The District Court also correctly held that the undisputed facts establish that Weyerhaeuser acquiesced to being responsible for the Retired Employees' workers compensation claims.  To establish acquiescence, a party must demonstrate that the acquiescing party "has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved."  *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582 (Del. Ch. 1998) (quoting *NTC Grp., Inc. v. W. Point-Pepperell, Inc.*, CIV. A. No. 10665, 1990 WL

---

begun tendering to Domtar new claims by Retired Employees, which Domtar was rejecting.

143842, at *5 (Del. Ch. Sept. 26, 1990)).  Acquiescence, unlike waiver, does not require proof of a party's intent.  *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014).

Weyerhaeuser's "full knowledge" of its rights is established by the same undisputed facts Domtar relied upon to establish the knowledge element of waiver. *See* pp. 5-6, 16, *supra*.  Likewise, Weyerhaeuser's recognition of its responsibility for the disputed claims and its actions inconsistent with the subsequent repudiation of that responsibility are demonstrated by the Giardini letter and the undisputed course of conduct Domtar relied upon to establish the voluntariness element of waiver.  *See* pp. 6-9, 16-18, *supra*.

Each of the arguments Weyerhaeuser offers to escape the District Court's finding of acquiescence fails.  *First*, Weyerhaeuser argues that Section 9.10 of the Contribution Agreement, which bars oral modification, also bars acquiescence because "acquiescence is a species of waiver."  WY. Br. 19, citing *Cantor Fitzgerald,* 724 A.2d at 584 n.44.  However, Section 9.10 by its terms provides only that the Agreements may not be "waived, amended, supplemented or modified" except in writing, all of which involve formal changes to the terms of the Agreements, while acquiescence by definition involves conduct or lack of

conduct.  It makes little sense to extend the requirement of a writing to that separate conduct-based defense.[10]

*Second,* the District Court correctly held that even if Section 9.10 applies to acquiescence, "the writing requirement can be waived for the same reasons it could always be waived with respect to waiver."  (App. 16.)  *See* pp. 25-28, *supra*; *see also Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28, 33 (Del. 1972) (finding acquiescence notwithstanding the existence of a provision requiring a written agreement to amend the contract's terms).

*Third*, even if the requirement of a signed writing was not waived, Giardini's letter, stating "we are all agreed" (App. 191), clearly conveyed Weyerhaeuser's acquiescence to Domtar's position and satisfied that requirement.  *See* pp. 23-25, *supra*.

*Fourth*, Weyerhaeuser's argument that a finding of acquiescence is improper because Weyerhaeuser lacked a proper understanding of its rights and made a "mistake," WY. Br. 24-27, fails for the same reasons as its arguments with respect to waiver.  *See* pp. 18-22, *supra*.  Weyerhaeuser's unequivocal course of conduct establishes acquiescence regardless of whether Giardini's decision was based on a

---

[10]    *Cantor Fitzgerald* involved a motion for a preliminary injunction, which the court denied, and thus its comments were dictum.  That court also noted that both the waiver and acquiescence arguments were "factually intensive" and could not be resolved at the preliminary injunction phase.  724 A.2d at 584.

mistaken interpretation of the Agreements.  *See Pepsico*, 297 A.2d at 33 (holding that plaintiff's continuing acceptance of price increases that were inconsistent with the parties' contract constituted acquiescence to a change of the contract terms, without considering the reasons for plaintiff's failure to assert its rights).

### D.    Weyerhaeuser's Attempted Retraction Was Ineffective.

#### 1.    Waiver

Weyerhaeuser's argument that it "retracted" its November 2008 waiver in 2012 when it "gave Domtar written notice . . . that it would enforce its rights to tender workers compensation claims to Domtar," WY. Br. 28, fails for three reasons.  *First*, Weyerhaeuser did not have the right to retract its waiver.  *Second*, even when such a right exists, it must be exercised before the other party has suffered prejudice or changed its position, which Weyerhaeuser did not do.  *Third*, Weyerhaeuser did not provide "reasonable notice" of its intention to retract its waiver until July 2013.  The District Court therefore properly rejected Weyerhaeuser's argument.

The Delaware Supreme Court has made clear that there is no right to retract a waiver:  "Once a right is waived, it is gone forever."  *Harleysville Ins. Co. v. Church Ins. Co.*, 892 A.2d 356, 364 (Del. 2005); *see also In re Givans Estate*, No. RW-74, 1993 WL 50316, at *1 (Del. Ch. Feb. 1, 1993) ("A right, once validly waived, cannot be reclaimed.").

Weyerhaeuser relies on *Amirsaleh v. Board of Trade of City of New York, Inc.*, 27 A.3d 522, 530 (Del. 2011), to argue that a knowing and voluntary waiver can be retracted at will.  WY. Br. 27.  But the court in *Amirsaleh* found that the defendant had not retracted its waiver, and thus the statement in *Amirsaleh* that a party may retract a waiver is dictum, which does not overrule the holding in *Harleysville*.

Even if a party could, in some circumstances, retract a waiver, *Amirsaleh* would require that such a retraction occur before the other party "has suffered prejudice or materially changed his position."  27 A.3d at 530.  As the District Court observed, Weyerhaeuser "waited over three years to retract its waiver, when it knew or should have known by 2008 all material facts necessary to discover its interpretative mistake."  (App. 27-28.)  Weyerhaeuser is wrong when it asserts that Domtar would suffer no prejudice if Weyerhaeuser were allowed to retract its waiver after so much time had expired.  WY. Br. 28.  The dispute over workers compensation claims was only one of numerous disputes arising out of the Sale, as reflected in Giardini's November 2008 letter and other correspondence.  (App. 573-80; 582-83; 586; 782-84.)  Domtar compromised on some of these issues and not others, and those negotiating decisions were informed by the results of other issues, including the allocation of the substantial workers compensation liability.  (App. 944-45.)  Domtar would clearly be prejudiced if Weyerhaeuser were

permitted to alter unilaterally the settlement landscape by holding Domtar responsible for millions of dollars of claims by Retired Employees after the parties had negotiated and resolved numerous other post-Sale issues. *See Getty Terminals Corp. v. Coastal Oil New England, Inc.*, 995 F.2d 372, 375 (2d Cir. 1993) (finding waiver and no retraction under New York UCC, noting "we cannot reconstruct ex post precisely what a party . . . would have done if it had advance notice that [plaintiff] was retracting its waiver . . . .").

Moreover, *Amirsaleh* would also require a party attempting to retract its waiver to provide "reasonable notice" of its intention, 27 A.3d at 530-31, but Weyerhaeuser failed to provide such notice. Although Weyerhaeuser knew or should have known at all times since 2008 "all material[] facts necessary to discover its interpretative mistake" (App. 28), Weyerhaeuser does not contend that it retracted its waiver until January 2012. Even then, Smucker's email did not purport to retract Weyerhaeuser's waiver with respect to all the claims it had paid since 2008 but only tendered one new claim filed by one Retired Employee. (App. 275-76.) Over the next 18 months, Smucker tendered a number of other cases on an ad-hoc basis. He did not indicate that he was repudiating Giardini's November 2008 letter, and Lane testified that Weyerhaeuser continued to invoice Domtar only for Transferred Employees' claims through his retirement in mid-2014. (*See* App. 609-10.)

33

It was not until July 2013—18 months later—that Smucker wrote to

Jablonski demanding payment from Domtar for all Retired Employee claims,

including those paid by Weyerhaeuser before 2012.  (App. 804-05.)  Thus,

Weyerhaeuser's delay in giving Domtar notice of its purported retraction of its

waiver was actually 18 months longer than the delay that the District Court held

was "unjustifiabl[e]."  (App. 29.)

### 2.    Acquiescence

The District Court held that, even if a waiver could be retracted, there is no

authority permitting retraction of acquiescence.  (App. 27.)  Weyerhaeuser argues

only that "acquiescence is a subset of waiver," WY. Br. 31, and, as in the District

Court, cites no authority allowing retraction of acquiescence.

Weyerhaeuser's argument that acquiescence applies only to past actions,

WY. Br. 31, finds no support in the case Weyerhaeuser cites, *Klaasen*, 106 A.3d at

1047, which involved only a single past action, and thus did not address

prospective acts.  Weyerhaeuser simply makes up its assertion that "to stop

acquiescence from applying to a prospective act, one simply stops acquiescing,"

for which it cites no authority.  WY. Br. 31.  That proposition is inconsistent with

the Delaware Supreme Court's holding in *Pepsico,* 297 A.2d 28, which affirmed

the Court of Chancery's denial of all relief sought, including an injunction that

would have prevented future price increases, on the ground of acquiescence.[11]

### E.   The Statute of Limitations Barred Claims That Accrued Before January 13, 2011 Because the Parties Did Not Agree To Toll the Statute of Limitations.[12]

Weyerhaeuser does not challenge the application of Delaware's three-year

statute of limitations for breach of contract claims, 10 Del. C. § 8106(a).  However,

it repeats the unsuccessful argument it made in the District Court that certain

agreements the parties negotiated in December 2009 and February 2013 tolled that

statute of limitations.  WY. Br. 34.  The District Court correctly rejected that

argument and held that the statute of limitations barred all claims that accrued

more than three years before Weyerhaeuser filed the Complaint, because the

agreements relied on by Weyerhaeuser did not toll those claims.  (App. 38-41.)

Neither agreement cited by Weyerhaeuser even mentions the statute of

limitations.  At most, each agreement reserves both parties' rights as to issues not

---

[11]  Weyerhaeuser's argument that waiver or acquiescence should be applied "on a claim by claim basis" by analogizing to the application of the statute of limitations to each separate breach of a contract, WY Br. 32-34, ignores the very nature of waiver and acquiescence, which result in a permanent change in the parties' contractual obligations. *See Pepsico*, 297 A.2d at 32 (the evidence of plaintiffs' acquiescence resulted in "the substitution of an oral agreement for the written provisions" of their contracts and "a relinquishment on their part of the written obligations").

[12]  The Court need not address this issue if it affirms the granting of summary judgment to Domtar.

included in the agreements. (App. 245 ("Each of the parties reserves all rights, and grants no releases, with respect to any matter other than the Post-Closing Resolved Items as set forth herein."); App. 297 ("[T]he Parties reserve all rights with respect to the Non-Addressed Workers Comp Claims.").)[13]

An agreement to "reserve all rights" is not a tolling agreement, and an agreement to continue or defer negotiations does not extend the statute of limitations in the absence of a clear intent to do so. The District Court (App. 40) correctly relied on *VLIW Technology, LLC v. Hewlett-Packard Co.*, No. 20069, 2005 WL 1089027, at *13 (Del. Ch. May 4, 2005), in which the Court of Chancery held that "[t]he fact that the parties were engaged in negotiations to avoid the suit is not a proper ground for tolling the statute of limitations" because it "would obviously undermine the public policy behind the statute of limitations." The court in *VLIW* further noted that "[t]olling the statute of limitations during such negotiations, without agreement of the parties, would encourage potential plaintiffs to engage in bad faith negotiations to lengthen the time they would have to bring a suit" and it "would also discourage potential defendants from engaging in negotiations to avoid giving plaintiffs more time to bring their suits." *Id*. at *13 n.54.

---

[13]    In fact, at the time of the December 2009 agreement, there was no ongoing dispute about the allocation of workers compensation liabilities.

Parties are not deemed to toll the statute of limitations unless they expressly and clearly state their intent to do so.  Here, the parties merely "reserve[d] all rights" with respect to these claims, which included all defenses, including the statute of limitations.  The District Court properly held that these reservations of rights did not toll the statute of limitations.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm the District Court's order granting Defendants-Appellees' motion for summary judgment and denying Plaintiff-Appellant's motion for summary judgment, and affirm the District Court's order granting in part Defendants-Appellees' motion to dismiss.

DATED:   April 12, 2017   Respectfully submitted,

<u>/s/ Gary W. Kubek</u>

| | |
|---|---|
| Gary W. Kubek | Chad M. Shandler (No. 3796) |
| Courtney M. Dankworth | RICHARDS, LAYTON & FINGER, P.A. |
| Alex Ginsberg *(admission pending)* | One Rodney Square |
| DEBEVOISE & PLIMPTON LLP | 920 North King Street |
| 919 Third Avenue | Wilmington, DE 19801 |
| New York, NY 10022 | (302) 651-7700 |
| (212) 909-6000 | shandler@rlf.com |
| gwkubek@debevoise.com | |
| cmdankwo@debevoise.com | |
| aginsber@debevoise.com | |

## COMBINED CERTIFICATIONS

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April 2017, I caused an electronic PDF copy of the foregoing Brief of Appellees to be filed and served with the Clerk of the Court for the United States Court of Appeals for the Third Circuit via CM/ECF, which sent notification of such filing to counsel for Appellants who are registered CM/ECF users.

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this Brief of Appellees is a member of the Bar of the United States Court of Appeals for the Third Circuit.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief of Appellees complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the Brief of Appellees was prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.  It further complies with Fed. R. App. P. 32(a)(7)(B) because it contains 7,462 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

## CERTIFICATION OF VIRUS CHECK

I hereby certify that a virus check was performed on the PDF file of the

Brief of Appellees using Symantec Endpoint Protection version 12.1.7004.6500,

and no virus was detected.

## CERTIFICATION OF TEXT OF BRIEF

I hereby certify that the text of the electronic brief filed on April 12, 2017

and the text of the hard copies of the brief are identical.


/s/ Gary W. Kubek
_____

Gary W. Kubek
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000
gwkubek@debevoise.com