No. 16-4159

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## WEYERHAEUSER COMPANY

**Plaintiff-Appellant,**

vs.

## DOMTAR CORP. and DOMTAR PAPER COMPANY, LLC,

**Defendants-Appellees.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

District Court Case No. 1:14-cv-00024-SLR

The Honorable Sue L. Robinson, District Judge

## APPELLANT'S REPLY BRIEF

BAYARD, P.A.
Stephen B. Brauerman
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000

HILLIS CLARK MARTIN &
PETERSON P.S.
LAURIE LOOTENS CHYZ
JAKE EWART
999 Third Avenue, Suite 4600
Seattle, Washington 98104
(206) 623-1745

Counsel for Plaintiff-Appellant

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   ARGUMENT .......................................................................................3

    A.    The undisputed evidence shows Weyerhaeuser did not
          intend to waive its rights.............................................................3

    B.    "The requisite intention to establish a waiver cannot be
          found in mistake." .......................................................................8

    C.    Weyerhaeuser did not waive the contract's written
          waiver requirement.....................................................................12

    D.    Any waiver or acquiescence does not apply to claims
          tendered after 2012. ...................................................................14

    E.    The parties' written agreements tolled the statute of
          limitations...................................................................................19

III.  CONCLUSION ...................................................................................20

i

# TABLE OF AUTHORITIES

**Page**

### Cases

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*,
    871 A.2d 428 (Del. 2005) ..................................................................... 4, 6, 8

*Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*,
    27 A.3d 522 (Del. 2011) ...................................................................... 15, 16

*Cantor Fitzgerald, L.P. v. Cantor*,
    724 A.2d 571 (Del. Ch. 1998) ............................................................... 8, 15

*Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*,
    489 A.2d 413 (Del. 1985) ......................................................................... 20

*Cont'l Ins. Co. v. Rutledge & Co.*,
    750 A.2d 1219 (Del. Ch. 2000) ................................................................. 14

*Courtney v. La Salle Univ.*,
    124 F.3d 499 (3d Cir. 1997) ...................................................................... 16

*E.I. duPont de Nemours & Co. v. Medtronic Vascular, Inc.*,
    No. CIV.A. N10C-09058MMJ, 2013 WL 261415 (Del. Super. Ct.
    Jan. 18, 2013), *as corrected* (Jan. 29, 2013) ............................................ 20

*Eureka VIII LLC v. Niagara Falls Holdings LLC*,
    899 A.2d 95 (Del. Ch. 2006) ...................................................................... 5

*In re Blair*,
    18 B.R. 277 (Bankr. D.N.D. 1982) .............................................................. 9

*In re Marriage of Woods*,
    207 Or. App. 452, 142 P.3d 1072 (2006) .................................................... 9

*In re MIG, LLC*,
    543 B.R. 527 (Bankr. D. Del. 2015) ........................................................... 16

*Julian v. E. States Constr. Serv., Inc.*,
    No. 1892-VCP, 2008 WL 2673300 (Del. Ch. July 8, 2008) .................. 9, 11

ii

*Minnesota Mut. Fire & Cas. Co. v. Rudzinski*,
    347 N.W.2d 848 (Minn. Ct. App. 1984) ........................................................8

*Moore v. Travelers Indem. Ins. Co.*,
    408 A.2d 298 (Del. Super. Ct. 1979)................................................. 8, 10, 12

*Pardini v. Allegheny Intermediate Unit*,
    524 F.3d 419 (3d Cir. 2008) ........................................................................13

*Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*,
    297 A.2d 28 (Del. 1972)...............................................................................19

*Price v. Wilmington Trust Co.*,
    1995 WL 317017 (Del. Ch. May 19, 1995) .................................................20

*Tenneco Auto. Inc. v. El Paso Corp.*,
    No. CIV. A. 18810-NC, 2004 WL 3217795 (Del. Ch. Aug. 26, 2004) 15, 19

*Textron, Inc. v. Acument Global Techs.*,
    C.A. No. 10C-07-103 JRJ CCLD, 2011 WL 1326842 (Del. Super.
    Ct. Apr. 6, 2011) ...........................................................................................9

*VLIW Technology, LLC v. Hewlett-Packard Co.*,
    No. 20069, 2005 WL 1089027 (Del. Ch. May 4, 2005) .............................20

*Wilson v. Am. Ins. Co.*,
    209 A.2d 902 (Del. 1965)............................................................................18

**Treatises**

28 Am. Jur. 2d *Estoppel & Waiver*...................................................................8

## I.    INTRODUCTION

Before this litigation, no party—not Weyerhaeuser, not Domtar—believed Weyerhaeuser had waived a contract right.  Weyerhaeuser did not believe it had waived a right, since it did not intentionally assume millions of dollars of Domtar's workers compensation liabilities in exchange for *nothing* in return from Domtar.  Domtar did not understand Weyerhaeuser to have waived a right because Domtar believed Weyerhaeuser was complying with the parties' contract.  This litigation exists because *both* parties, for a period of time, misunderstood their contract.  None of this is consistent with waiver.

In fact, the law of waiver protects parties against accidentally waiving their rights in just these types of circumstances.  Waiver is the *voluntary and intentional* relinquishment of a *known* right.  These elements are so important that an *unequivocal* intent to waive must be proved here by *clear and convincing* evidence.  In other words, a waiver does not exist unless it is absolutely clear the waiving party knew it was giving up a right, and intentionally gave it up anyway.  The evidence shows exactly the opposite happened here.  Two parties proceeded under a mistaken interpretation of their contract rights until one party recognized the error.  The parties did not rewrite the contract, and they certainly did not agree to ignore it and intentionally shift millions of dollars of workers compensation liability from Domtar to Weyerhaeuser.

1

The parties' contract further protected the parties from an unintentional waiver.  The contract states that no provision of the contract "shall be deemed waived, amended, supplemented or modified" unless the waiver "is in writing and signed" by the waiving party.  There is no evidence—none—that the parties intended to waive this provision in order for Weyerhaeuser to waive a different substantive right that neither party thought Weyerhaeuser had in the first place.

The district court's finding of waiver is thus inconsistent with the facts, with Delaware law, and with common sense.  Nor does it do justice.  Domtar has benefitted tremendously from the parties' mutual mistake.  Even if this Court affirms only the district court's statute of limitations ruling, Domtar will have already saved millions of dollars in workers compensation payments it was required to make under the contract.  Domtar now claims it would somehow be harmed if it were required to abide by the contract, but there is no evidence of that.  There is no evidence Domtar has given Weyerhaeuser *anything* in exchange for Weyerhaeuser's workers compensation payments (this is unsurprising, since the parties mistakenly believed the liability was Weyerhaeuser's); nor is there any evidence that Domtar has taken any action in reliance on an expectation that Weyerhaeuser would continue to make Domtar's workers compensation payments into the future.  If this Court reverses the district court—as it should—the only result will be enforcement of the contract

2

Domtar and Weyerhaeuser signed.  No harm results from that, and it is the outcome required by Delaware law.

## II.    ARGUMENT

### A.    The undisputed evidence shows Weyerhaeuser did not intend to waive its rights.

Domtar continues to insist Weyerhaeuser "waived its contractual rights . . . both through a letter signed by its authorized representative and by its course of conduct for more than three years."  (Appellees' Answering Br. ("Answering Br.") at 1.)  Neither shows waiver.

It is worth repeating what Anne Giardini's November 26, 2008 letter to Domtar actually said about workers compensation:

> Previous invoices were based on our employees' understanding that all workers compensation liability transferred to Domtar.  In fact, we are all agreed that US workers compensation liability went to Domtar only for employees who became able to work in some capacity at Domtar.

(App. 191.)  *Nothing* in those statements suggests Weyerhaeuser was voluntarily relinquishing a right it had under the contract.  It reflects only an understanding—shared by Domtar—about the contract's effect.  That understanding turned out to be mistaken.  The letter did not signal an agreement to ignore existing contract language, change existing contract language, or bargain away rights Weyerhaeuser and Domtar knew Weyerhaeuser possessed.

3

The letter is inconsistent with a voluntary and intentional relinquishment of a known right, and consistent, instead, with Anne Giardini's undisputed testimony that she wrote that letter based on a mistaken understanding of the contract (a mistake Domtar had also made).[1]  (App. 122, 125, 128-30.)

Weyerhaeuser's conduct is also not proof of waiver.  Domtar repeats the district court's claim that Weyerhaeuser waived its contract rights "through a 'continuous, conscious and voluntary course of action' 'over the course of several years.'"  (Answering Br. at 14 (quoting App. 25).)  But engaging in volitional actions over a series of years is not the standard for waiver.  Waiver requires the voluntary and intentional relinquishment of a known right.  *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005).

The conduct cited by Domtar is as consistent with a mistake as it is with anything else.  It is not surprising, for example, that Weyerhaeuser changed its

---

[1] Domtar also continues to argue that Giardini's "Without Prejudice" designation is not certain proof, under Canadian law, that Domtar was not entitled to rely on Giardini's letter.  (Answering Br. at 23-25.)  As described in Weyerhaeuser's opening brief, Giardini and Domtar had established a course of conduct in which the "Without Prejudice" designation signaled that the letter was not legally binding.  (Appellant's Opening Brief ("Opening Br.") at 11-12.)  That course of conduct, and Giardini's use of the "Without Prejudice" designation on her November 26, 2008 letter, is simply further evidence—under Delaware law— that she did not intend in her letter to casually waive a multimillion dollar contract right.  Canadian law is irrelevant to this analysis.

accounting records after Anne Giardini met with Domtar and embraced

Domtar's mistaken contract interpretation.  (Answering Br. at 17.)  Nor is it

surprising that Giardini's subordinates took steps and made statements

consistent with Giardini's mistake.  (*Id.*)  Domtar also claims Giardini

"discussed the issue" with Weyerhaeuser's general counsel, but she testified to

no such thing.  (*Id.*)  She testified only that she would have "report[ed]"—as a

general matter—to the general counsel after the meeting, and that she did not

recall the substance of any discussion she might have had.[2]  (App. 548-49.)

Waiver requires "clear and convincing evidence" of an intent to relinquish a

known right when that right is contained in a contract that requires any waiver to

be written.  *Eureka VIII LLC v. Niagara Falls Holdings LLC*, 899 A.2d 95, 109

(Del. Ch. 2006).  Domtar's evidence of Weyerhaeuser's conduct—which is

entirely consistent with implementing a mistake—simply does not meet that

standard.  *AeroGlobal*, 871 A.2d at 444 ("The facts relied upon to prove waiver

must be unequivocal.").

--------------------

[2] It makes sense that Giardini would not have discussed the workers compensation issue with Weyerhaeuser's general counsel, Sandy McDade.  It was only one of many issues discussed at the Montreal meeting, the parties discussed workers compensation only for a "brutally short" time, and no one was focused on the Retired Employees that are the source of the millions of dollars in disputed liability.  (App. 125, 601-02.)

The fact is, no party thought this was a waiver.  Weyerhaeuser and Domtar executed *no* follow-up agreements to document a waiver, even though the contract contained a writing requirement (Contribution Agreement Section 9.10), and even though it was the parties' practice to document negotiated resolutions in formal writings signed by both parties (Opening Br. at 12-14).  Why was no such agreement ever executed?  Because both parties mistakenly believed the contract already allocated the workers compensation liability to Weyerhaeuser.  Weyerhaeuser cannot have intentionally waived a right neither party believed it possessed.

We also know this was not a waiver because, until this litigation, Domtar never claimed a waiver had occurred.  After Weyerhaeuser started tendering workers compensation claims in 2012, Domtar consistently rejected the tenders solely on the basis that the contracts allocated liability to Weyerhaeuser:

> Under Section 2.03(a)(vii) of the Amended and Restated Contribution and Distribution Agreement, Domtar assumed all employment and employee benefit-related Liabilities with respect to Transferred Employees. . . . [The employee at issue] does not fall under the definition of Transferred Employees as set forth under Section 6.09(a)(i) of the Amended and Restated Transaction Agreement.

(App. 280, 283-84.  *Accord* App. 305.)  Domtar also agreed, in a subsequent written agreement (raising and preserving the workers compensation dispute), that the workers compensation issue was open—not waived.  (App. 297.)

6

Even after Weyerhaeuser threatened litigation, Domtar's Senior Vice President of Law and Corporate Affairs, Zygmunt Jablonski, responded by claiming the "Spin-off Agreements provide that these liabilities were retained by Weyerhaeuser and its subsidiaries." (App. 290.) Jablonski pointed to Giardini's November 26, 2008 letter, but characterized it as an "acknowledge[ment]" of the existing contract requirements, not an agreement to disregard or modify language allocating the liability to Domtar. (App. 290-91.) And after litigation commenced, Domtar continued to insist the contract itself required Weyerhaeuser to assume the disputed workers compensation liability. (Trial D.I. No. 13 at 4-9.) Domtar claimed waiver for the first time only after the district court agreed with Weyerhaeuser's contract interpretation. (Trial D.I. No. 20.)

Domtar spends much of its brief attempting to characterize Weyerhaeuser's actions as an intentional relinquishment of its workers compensation rights, but the evidence does not support that litigation position. The evidence is unequivocal, clear, and convincing in support of only one conclusion: Weyerhaeuser, like Domtar, misinterpreted the contract. That mistake was unquestionably regrettable, but it was not a waiver under Delaware law.

### B.    "The requisite intention to establish a waiver cannot be found in mistake."

Waiver is the voluntary and *intentional* relinquishment of a *known* right. *AeroGlobal*, 871 A.2d at 444.  Acquiescence, a species of waiver, also requires full knowledge of one's rights and the material facts.  *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582, 584 (Del. Ch. 1998).  It therefore follows that "The requisite intention to establish a waiver cannot be found in mistake." *Moore v. Travelers Indem. Ins. Co.*, 408 A.2d 298, 302 (Del. Super. Ct. 1979).  This is not a stray line in single Delaware case.  It is a concept articulated in treatises,[3] in cases around the country,[4] and embodied in other Delaware cases.[5]  It could not be otherwise, or else a party could accidentally, and unintentionally, waive a contract right.  The law does not permit such a waiver.

---

[3] *E.g.*, 28 Am. Jur. 2d *Estoppel & Waiver* § 192 (1964) ("Mere negligence, oversight, or thoughtlessness does not create a waiver.")

[4] *E.g.*, *Minnesota Mut. Fire & Cas. Co. v. Rudzinski*, 347 N.W.2d 848, 851 (Minn. Ct. App. 1984) ("A mutual mistake of law is not a voluntary relinquishment of a known right and consequently does not support a claim of waiver."); *In re Blair*, 18 B.R. 277, 279 (Bankr. D.N.D. 1982) (a mistake cannot result in waiver); *In re Marriage of Woods*, 207 Or. App. 452, 462, 142 P.3d 1072 (2006) (same).

[5] *E.g.*, *Julian v. E. States Constr. Serv., Inc.*, No. 1892-VCP, 2008 WL 2673300 (Del. Ch. July 8, 2008); *Textron, Inc. v. Acument Global Techs.*, C.A. No. 10C-07-103 JRJ CCLD, 2011 WL 1326842 (Del. Super. Ct. Apr. 6, 2011).

Indeed, Domtar attempts to read *knowledge* and *intention* out of the necessary elements altogether. For example, Domtar claims Weyerhaeuser waived its rights because it had "knowledge of all material facts relating to [its] rights." (Answering Br. at 16 (citation omitted).) Even assuming that is true, it does not prevent a court from concluding Weyerhaeuser acted on a mistake and without full knowledge of its rights. Indeed, Domtar knew all the same material facts Weyerhaeuser knew, and Domtar held to its mistaken contract interpretation far longer than Weyerhaeuser (in fact, well into this litigation). Having all the material facts is not proof of knowledge or intention to waive.

Domtar next claims that the waiver was voluntary because of Giardini's letter, which she obviously intended to write, and wrote voluntarily. (*Id.*) But as described above, Giardini's voluntarily written letter does not show that Giardini *intended* to assume—for no apparent reason—millions of dollars in workers compensation liability she believed rightfully belonged to Domtar under the contract. The letter shows only her mistaken agreement with Domtar's contract interpretation. Moreover, Giardini's letter is no different from the letter sent in *Moore*, in that the authors of both letters mistakenly stated their company bore a liability it did not. *Moore*, 408 A.2d at 302. Just as the letter in *Moore* was not a waiver, neither was Giardini's. *Id.*

9

Third, and finally, Domtar infers knowledge and intent by pointing to Weyerhaeuser's conduct in implementing Giardini's mistake. (Answering Br. at 17-18.) But the record shows that, rather than contributing to the decision to not tender claims to Domtar, Weyerhaeuser employees merely acted on mistaken advice from Giardini. (App. 99, 128, 600.) Again, none of this conduct shows an intent to give up millions of dollars; it shows only that Weyerhaeuser took volitional actions to implement Giardini's mistaken reading of the contract (a mistaken reading she shared with Domtar).

Because Weyerhaeuser, like Domtar, quite obviously acted in accordance with a mistake, Domtar also attempts to argue that a mistake can result in waiver. But this cannot be the law as long as waiver requires intent and full knowledge of one's rights.

Domtar attempts to distinguish the *Moore* decision by arguing it was a mere "administrative mistake" unlike the "interpretive mistake" that occurred here.[6] (Answering Br. at 19.) This is a distinction without a difference. Domtar does not and cannot explain why one type of mistake is different from any other in defeating the required elements of knowledge and intent under Delaware waiver law.

---

[6] Domtar does not dispute that *Moore* applies to all contractual disputes, and not just insurance cases.

Domtar, like the district court, also cites the *Julian* decision to claim that no party can claim a mistake when it had "an arguable basis" to believe it might be making a mistake. (*Id.* at 20-21.) But in *Julian*, the waiving party recognized it might be making a mistake and consciously decided not to pursue the matter because the party was tired of litigation. *Julian*, 2008 WL 2673300, at *17. That was an intentional choice. Here, there is no evidence that Giardini adopted Domtar's mistaken interpretation for any reason other than that she wrongly agreed with it. There is no evidence she had grown weary of negotiating, traded the issue for a concession by Domtar on a different issue, or decided the contract language as drafted was unfair and should not be enforced. The evidence shows no intention by Giardini to voluntarily give up millions of dollars.

Domtar also attempts to distinguish the *Textron* case on the same basis as the district court: that the party in *Textron* made one consistent mistake, whereas Weyerhaeuser advanced one position, mistakenly adopted an alternate position, and then realized its mistake. (Answering Br. at 21-22.) Neither the district court nor Domtar offers any logical reason why this matters to any showing of intent, or knowledge of one's full rights, when the purported waiver was made. (*See id.*; App. 23.) Under Delaware law, Weyerhaeuser cannot waive a contract right if it did not *intend* to waive a right it *knew* it had at the time.

11

Because waiver is the voluntary and *intentional* relinquishment of a *known* right, a party cannot mistakenly waive its rights. This logic is embodied in Delaware law, and in the cases cited by the parties. No matter how Domtar attempts to distinguish those cases on the facts, the principle is the same: "The requisite intention to establish a waiver cannot be found in mistake." *Moore*, 408 A.2d at 302. There is no evidence—and certainly not unequivocal, clear, and convincing evidence—that Weyerhaeuser intentionally decided to assume millions of dollars of workers compensation liability it knew belonged to Domtar.

### C.    Weyerhaeuser did not waive the contract's written waiver requirement.

Section 9.10 of the Contribution Agreement states that no provision in the contract "shall be deemed waived, amended, supplemented or modified" unless the waiver "is in writing and signed" by the waiving party. (App. 372.) The district court, *sua sponte*, decided that Weyerhaeuser had waived this writing requirement. (App. 15-18.) Domtar defends this ruling by pointing out that a district court is free to rule on a legal theory neither party advanced. (Answering Br. at 25-26.) No party disputes that. But a district court is *not* free to rely on *facts* not supported by the record. *See Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 422 (3d Cir. 2008) (courts abuse their discretion by improperly applying law to fact). The district court did not cite *any evidence*—and certainly

12

not unequivocal, clear, and convincing evidence—that Weyerhaeuser voluntarily and *intentionally* waived this writing requirement so it could then waive workers compensation rights it did not realize it possessed.  (*See* App. 15-18.)  No such evidence exists, and such a waiver simply never occurred.

Indeed, until the district court found a waiver of the writing requirement, neither party had *ever* asserted (or even acted like) the requirement had been waived.  In the trial court, Domtar explicitly tied its waiver argument to Weyerhaeuser's *satisfaction* of the writing requirement:

> *Domtar does not contend that Weyerhaeuser's conduct in itself waived its rights*.  Rather, Weyerhaeuser's years of continuing conduct confirm that *Giardini's letter constituted a waiver*, and not just some mistaken assertion of a non-binding proposal.  *Giardini's letter satisfies the requirement of Section 9.10* of the Contribution Agreement that no provision of the Agreements 'shall be deemed waived, amended, supplemented or modified' unless the waiver 'is in writing and signed' by an authorized representative of the waiving party."

(Trial D.I. No. 64 at 7 (emphasis added).)  And, before the litigation, the parties showed no sign that they had waived Section 9.10's writing requirement, since the parties established a course of conduct that included executing formal written contracts when resolving disagreements.  (App. 243-70, 294-99.)[7]

---

[7] Domtar curiously asserts Weyerhaeuser has not cited any evidence of the parties' course of conduct while also acknowledging that Weyerhaeuser cited the 2009 and 2013 settlement agreements.  (Answering Br. at 27.)  Even one executed agreement is enough to establish a course of conduct that precludes

Because Section 9.10 was not waived, and because Section 9.10 requires any waiver to be in writing, the Court cannot find a waiver here.  There is no writing in which Weyerhaeuser unequivocally waived its workers compensation rights or the protections of Section 9.10.  In addition, Section 9.10's writing requirement precludes an acquiescence defense, which is necessarily based on conduct, as Domtar concedes.  Answering Br. at 29-30.  Section 9.10 exists to prevent the waiver of any rights through conduct alone, and acquiescence is a type of waiver that occurs through conduct.  *Cantor Fitzgerald*, 724 A.2d at 584; *Tenneco Auto. Inc. v. El Paso Corp.*, No. CIV. A. 18810-NC, 2004 WL 3217795, at *12 (Del. Ch. Aug. 26, 2004).

### D.    Any waiver or acquiescence does not apply to claims tendered after 2012.

Even if the Court were to find that waiver or acquiescence occurred, the waiver cannot extend beyond 2012, when Weyerhaeuser resumed tendering workers compensation claims to Domtar.  The Delaware Supreme Court established a test for retraction of wavier in *Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 27 A.3d 522, 530 (Del. 2011).  Acquiescence is a subset of waiver, *Tenneco*, 2004 WL 3217795, at *12, so the same test should apply.

---

finding a waiver in this context, even if the example agreement is executed after the purported waiver.  *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1229 (Del. Ch. 2000).

Domtar claims, however, that the Delaware Supreme Court endorsed retraction only in dictum. (Answering Br. at 32.) Dictum "is a statement which is unnecessary to a court's holding." *In re MIG, LLC*, 543 B.R. 527, 533 (Bankr. D. Del. 2015). In *Amirsaleh*, the Delaware Supreme Court held that a waiver could be retracted if reasonable notice was given and the retraction would not prejudice the other party. *Amirsaleh*, 27 A.3d at 530. The Court then applied that test to the defendants, and held the test was not satisfied because the defendants did not give reasonable notice to the plaintiff. *Id.* The issue of whether the waiver had been retracted was essential to the Court's holding and resolution of the case. It is therefore not dicta, it is binding law. *E.g.*, *Courtney v. La Salle Univ.*, 124 F.3d 499, 504 (3d Cir. 1997) (rejecting the "notion that an issue is not essential if, under some hypothetical resolution of the dispute, the issue could have been avoided").

Here, Weyerhaeuser gave reasonable notice of its retraction to Domtar and Domtar has not been prejudiced. When Weyerhaeuser began tendering claims to Domtar in 2012, Domtar was on notice that Weyerhaeuser would insist on Domtar accepting liability for those claims prospectively. Because Domtar could not reasonably believe after 2012 that Weyerhaeuser would continue to pay the Retired Employees claims, Weyerhaeuser provided reasonable notice.

15

Weyerhaeuser's notice was also timely. A retraction is timely under *Amirsaleh* as long as the retraction is made before the other party has detrimentally relied on the retracted position. *Amirsaleh*, 27 A.3d at 530. *Amirsaleh* imposes no other timeliness requirement, and the statute of limitations would protect a party from any stale claims resulting from a retraction.

Domtar seemingly argues that Weyerhaeuser failed to provide a sufficient retraction because it did not state explicitly that it was retracting a waiver that started in 2008. (Answering Br. at 33.) But Weyerhaeuser could not have issued such an explicit retraction because neither Weyerhaeuser nor Domtar believed, in 2012, that Weyerhaeuser had waived a contract right. Weyerhaeuser's resumed tenders were sufficient notice of its changed position.

Domtar also is not prejudiced by a retraction. To argue to the contrary, Domtar mischaracterizes the record by arguing it would not have made other compromises had it known it would be obligated to bear liability for Retired Employees workers compensation claims. (Answering Br. at 32-33.) As evidence, Domtar cites only the declaration of its Senior Vice President:

> If Weyerhaeuser had not agreed to accept responsibility for [workers compensation claims], as it did at the parties' September 11, 2008 meeting in Montreal and in Anne Giardini's letter of November 26, 2008, *although I of course cannot say with certainty how that would have affected the resolution of other parties' other disputed issues*, Domtar would have taken that additional financial

16

> responsibility into account when it negotiated with Weyerhaeuser
> with respect to those other issues.

(App. 944 (emphasis added).)  This declaration is entirely speculative.  Domtar

cannot offer any genuine evidence that it has been or would be prejudiced by

Weyerhaeuser's retraction.

To the contrary, even if the Court finds a waiver was retracted in 2012,

Domtar will still have profited from Weyerhaeuser's mistake.  Domtar does not

dispute that it profited roughly $9 million while the parties performed in

accordance with their shared misunderstanding of the contract.  Limiting that

windfall is not prejudice.

Moreover, other legal defenses protect a party in Domtar's position from

any prejudice it might suffer from retraction.  For example, the statute of

limitations (discussed further below) prevents parties from making stale claims,

and the doctrine of equitable estoppel would protect Domtar from a retraction if

Domtar could actually prove detrimental reliance on Weyerhaeuser's previous

position (it cannot).  *E.g.*, *Wilson v. Am. Ins. Co.*, 209 A.2d 902, 903-04 (Del.

1965) (listing elements of equitable estoppel).  In the absence of detrimental

reliance, claims not barred by the statute of limitation survive a retraction.

Because Weyerhaeuser is allowed to retract any waiver, that retraction

also applies to acquiescence as a subset of waiver.  *See Tenneco*, 2004 WL

17

3217795, at *12.  Arguing to the contrary, Domtar heavily relies on *Pepsico*[8] by asserting that acquiescence and waiver result in a permanent change of the contractual rights.  (Answering Br. at 35.)  That may be true if the waiving or acquiescing party did not make a proper retraction.  But the parties in *Pepsico* did not assert that acquiescence could be retracted or ceased.  The case was decided decades before *Amirsaleh*, and, accordingly, *Pepsico* does not answer the retraction question.

Domtar does not otherwise dispute that it is appropriate to analyze the tender of workers compensation claims on a claim-by-claim basis.[9]  Indeed, Domtar does not dispute that each workers compensation claim should be subject to its own analysis within the statute of limitations context.  Because Weyerhaeuser made it clear from 2012 forward that it would not acquiesce to the incorrect interpretation of the contract, Domtar should, at a minimum, be required to accept liability for claims tendered from 2012 forward.  *Price v. Wilmington Trust Co*., 1995 WL 317017 at *2-3 (Del. Ch. May 19, 1995).

---

[8] *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*, 297 A.2d 28 (Del. 1972).

[9] Domtar also does not dispute that the "natural consequence" analysis the district court performed in its memorandum opinion was flawed.

18

### E.    The parties' written agreements tolled the statute of limitations.

Lastly, Domtar does not dispute that an agreement to toll the statute of limitations is effective.  *See Cheswold Volunteer Fire Co. v. Lambertson Const. Co*., 489 A.2d 413, 421 (Del. 1985).  Instead, Domtar argues that an agreement to continue or defer negotiations does not extend the statute of limitations. (Answering Br. at 36 (citing *VLIW Technology, LLC v. Hewlett-Packard Co*., No. 20069, 2005 WL 1089027, at *13 (Del. Ch. May 4, 2005)).)  However, in *VLIW*, the parties only negotiated and did not enter into an agreement.  *Id*. at *13-15.  While negotiation alone may not toll the statute of limitations, a signed agreement will.  *See E.I. duPont de Nemours & Co. v. Medtronic Vascular, Inc*., No. CIV.A. N10C-09058MMJ, 2013 WL 261415, at *11 (Del. Super. Ct. Jan. 18, 2013), *as corrected* (Jan. 29, 2013).

In this case, the parties have signed agreements that preserve their disputes for later resolution.  That is especially true in the 2013 agreement, where the parties specifically called out the workers compensation claim dispute and stated the parties intended to address those issues at a later date.  (App. 372.) "Pending the later addressing of those issues, the Parties reserve[d] all rights with respect" to the workers compensation claims.  (*Id*.)  Domtar claims that, by reserving "all rights" in that agreement, it was also reserving its statute of limitations defense.  (Answering Br. at 37.)  But if that were true, the provision

would be nonsensical or illusory.  The parties were expressly preserving the

workers compensation dispute for future resolution.  While the parties may have

reserved their rights with respect to the *substance* of the dispute, they plainly did

not reserve any rights to foreclose additional discussion.  By agreeing that the

workers compensation dispute was open and subject to subsequent resolution,

the parties' agreements tolled the statute of limitations.

## III.    CONCLUSION

Under Delaware law, a party cannot accidentally waive a contract right.

The district court erred by effectively holding otherwise.  For approximately

three years, the parties operated under a shared misunderstanding of their

contracts.  Domtar now asks the Court to rule that the parties' shared

misunderstanding amounted to a voluntary and intentional relinquishment of a

known right by Weyerhaeuser.  The facts simply do not support such a finding.

Delaware law does not permit a waiver or acquiescence to be based on a mistake

like the one at issue here.  The Court should reverse the district court and require

Domtar to bear the workers compensation liability it agreed to assume in the

Sale.  At the very least, the Court should hold that Weyerhaeuser retracted any

waiver, and halted any acquiescence, when it resumed tendering workers

compensation claims to Domtar in 2012.  Domtar is not entitled to permanent

relief from its contract obligations simply because it benefitted for a short time from the parties' shared mistake.

RESPECTFULLY SUBMITTED this 26th day of April, 2017.

BAYARD, P.A.

/s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com

HILLIS CLARK MARTIN & PETERSON P.S.
Laurie Lootens Chyz, WSBA #14297
Jake Ewart, WSBA #38655

Attorneys for Plaintiff-Appellant,
Weyerhaeuser Company

## COMBINED CERTIFICATIONS

I, Stephen B. Brauerman, Esquire, hereby certify as follows:

(1)    That I am a member of the bar of the United States Court of Appeals for the Third Circuit;

(2)    This brief complies with the typevolume limitation because it contains 4,597 words as counted by Microsoft Word 2010;

(3)    The text of the electronic version of this Brief is identical to the paper copies of this Brief submitted to the Court; and

(4)    A virus detection program, Kaspersky Online Scanner has been run against the final PDF version of the brief prior to filing, and no virus was detected.

DATED this 26th day of April, 2017.

BAYARD, P.A.

/s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com

22

HILLIS CLARK MARTIN & PETERSON P.S.
Laurie Lootens Chyz, WSBA #14297
Jake Ewart, WSBA #38655

Attorneys for Plaintiff-Appellant,
Weyerhaeuser Company

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,597 words as counted by Microsoft Word 2010.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

RESPECTFULLY SUBMITTED this 13th day of April, 2017.

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com

HILLIS CLARK MARTIN & PETERSON P.S.
Laurie Lootens Chyz, WSBA #14297
Jake Ewart, WSBA #38655

Attorneys for Plaintiff-Appellant,
Weyerhaeuser Company

# CERTIFICATE OF SERVICE

I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on April 26, 2017.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.  I further certify that one courtesy copy of the foregoing brief and appendix were served upon all counsel of record by U.S. Mail on April 27, 2017.

DATED this 26th day of April, 2017.

BAYARD, P.A.

 /s/ Stephen B. Brauerman

Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000
sbrauerman@bayardlaw.com

HILLIS CLARK MARTIN & PETERSON P.S.
Laurie Lootens Chyz, WSBA #14297
Jake Ewart, WSBA #38655

Attorneys for Plaintiff-Appellant,
Weyerhaeuser Company